## Bentler v. Commonwealth.

(Decided May 5, 1911.)

## Appeal from Kenton Circuit Court
## (C. C. L. & E. Division).

Gaming—Conducting Poker Game for Compensation—Admission of Guilt Under Promise of Immunity—Trial and Acquittal—Appellant was tried and convicted for feloniously setting up a game of cards known as poker for compensation and his punishment fixed at confinement in the penitentiary for a period of from one to three years, and a fine of $500.00 and costs and was adjudged infamous and forever disqualified from suffrage or from holding an office of trust or profit, under Kentucky statute, section 1960. Appellant, upon being introduced as a witness, before the grand jury, at first refused to answer the questions on the ground that his testimony would be self-incriminating; whereupon the attorney for the Commonwealth told him in the presence of the grand jury that no testimony he might give would be used against him in any prosecution except for perjury or false swearing. Upon this assurance he testified fully as to all matters charged in the indictment which was found against him the next day. Section 1973, Kentucky Statute provides: "In any prosecution for a penalty against gaming it shall be no exemption for a witness that his testimony may incriminate himself, but no such testimony given by the witness shall be used against him in any prosecution against him except for false swearing or perjury." Held that the appellant was entitled to an acquittal by virtue of section 1973 of the statute, supra, and having been refused a dismissal of the indictment by the court on his motion before trial, he was clearly entitled on the trial to a peremptory instruction directing his acquittal on his plea of abatement.

O. M. ROGERS for appellant.

JAS. BREATHITT, Attorney General and TOM B. McGREGOR, Assistant Attorney General for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

Appellant was tried and convicted in the court below under an indictment charging him with the offense of unlawfully, wilfully and feloniously setting up and conducting for compensation, percentage or commission, in a house on Pike street, in Covington, a game of cards known as poker, on which money and property were bet, won and lost. The verdict of the jury was as follows:

"We, the undersigned jury, having carefully weighed and considered the evidence in the case of Anton Bentler have unanimously decided that the defendant is guilty, however, we recommend leniency."

Upon this verdict the court entered judgment as follows:

"Therefore, the defendant, Anton Bentler, being personally present and being informed of the nature of the indictment, plea and verdict, and asked if he had any legal cause to show why judgment should not be pronounced against him, and none being shown, it is adjudged that he be confined in the penitentiary at hard labor for a period of from one to three years. It is also adjudged that the Commonwealth of Kentucky recover of the defendant the sum of $500 and its costs herein expended.

"It is further adjudged that the defendant be deemed infamous, and be forever hereafter disqualified from exercising the right of suffrage and from holding any office of honor, trust or profit, whether it be State, county or municipal."

Appellant moved for a new trial upon various grounds, but the motion was overruled, and he is now asking the reversal of the judgment of conviction and assigns as error: 1st. The ruling of the circuit court in refusing to quash the indictment as moved by him before the trial. 2d. Its refusal to dismiss the indictment upon his plea in abatement and the evidence introduced in support thereof. 3d. Its refusal to sustain appellant's objection to the introduction of D. E. Pepple as a witness, and to exclude the latter's testimony. 4th. Its refusal to peremptorily instruct the jury, at the conclusion of the

Commonwealth's evidence, to find appellant not guilty. 5th. Improper conduct of the court in going into the jury room and in the absence of appellant and his counsel consulting with and orally advising the jury as to the law of the case.

The indictment was found by the grand jury under section 1960, Kentucky Statutes, which provides:

"That whoever with or without compensation shall set up, carry on, keep, manage, operate or conduct, or shall aid or assist in setting up. carrying on, keeping, managing, operating or conducting a keno bank, faro bank, or other machine or contrivance used in betting whereby money or other thing may be won or lost; or whoever shall for compensation, percentage or commission, set up, carry on, manage, operate or conduct a game of cards, oontz or craps, whereby money or other thing may be won or lost, or shall with or without compensation, percentage or commission, aid, assist or abet in setting up, carrying on, managing, operating or conducting any game so set up, carried on, managed or conducted for compensation, percentage or commission, shall be fined $500 and costs, and confined in the penitentiary not less than one nor more than three years; shall be deemed infamous after conviction, and be forever thereafter disqualified from exercising the right of suffrage, and from holding any office of honor, trust or profit, whether it be State, county, city or municipal. The judgment of conviction in every case shall recite such infamy and disqualification, and shall not be valid without such recital. The provisions of this section shall not include nor be applicable to such persons who play at such games, tables, banks, or with such machine or contrivance, unless they take part in setting up, conducting, keeping, managing, operating or carrying on such tables, banks, games, machine or contrivance, or aid or assist in setting up, keeping, conducting, managing or operating such game, bank, tables, machine or contrivance."

It appears from the record that one Bert Tomlin was jointly indicted with appellant and that the indictment was returned February 2, 1911. On February 1, 1911, appellant, in obedience to a subpoena, went before the grand jury and testified as a witness. The grand jury was then investigating, among other violations of the law in Kenton county, gaming at No. 23, Pike street, in the city of Covington. Appellant was interested in the

poker room, or gaming establishment at 23 Pike street, Covington, and was in fact, with Tomlin and perhaps others, operating for a profit or commission the gaming establishment there conducted. It further appears from the record that when called before the grand jury appellant was interrogated by the Commonwealth's Attorney as to his knowledge of the gaming that had been going on and was then being conducted at 23 Pike street in the city of Covington. He refused to answer the questions of the Commonwealth's Attorney on the ground, as he frankly told that officer and the grand jury, that such answers would have been self-incriminating; whereupon the Commonwealth's Attorney told him, in the presence of the grand jury, that the fact that his testimony would be self-incriminating would not exempt him from answering the questions or excuse his not doing so, and that he would, if he persisted in his refusal to make answer, be taken before the court and compelled to do so. In this connection he was, however, assured by the Commonwealth's Attorney that no testimony he might give in respect to the gaming about which he was being questioned could be used as evidence against him in any prosecution, except for perjury or false swearing. Upon receiving this explanation and assurance appellant testified fully as to all matters and things charged against him in the indictment which the grand jury returned the next day.

The motion made by appellant before trial to quash the indictment, as was his further motion to dismiss it, presented on the trial in the form of a special plea in abatement supported by evidence, was based on the theory that his testimony given under compulsion before the grand jury, whereby his guilty participation and that of others in the gaming set up and conducted at house No. 23 Pike street, Covington, was established, operated to exempt him from punishment or prosecution for the offense charged in the indictment; such exemption or immunity being claimed under section 1973, Kentucky Statutes, which provides:

"In any prosecution for a penalty against gaming, it shall be no exemption for a witness that his testimony may criminate himself; but no such testimony given by the witness shall be used against him in any prosecution, except for false swearing or perjury, and he shall be discharged from all liability for any gaming so necessarily

disclosed in his testimony; and, furthermore, the person against whom he testifies shall not be received to prove any gaming theretofore by such witness."

The section, supra, in substantially its present form has been in force since the year 1848, but this is the first time its construction has been asked at the hands of this court. In view of its language no doubt can arise as to its meaning. The object of the entire statute of 1893 of which this section, though of older date, is a part, was to suppress gambling, and the Legislature in enacting it doubtless had in mind that the most effective way of attaining the desired end would be to compel the participant in any of the offenses constituting gaming or gambling in the meaning of the statute, to testify as to his own guilt and that of other participants, and in return for the deprivation of his right to refuse to testify, when to do so would be self-incriminating, grant him immunity from prosecution for his part in the offense. The offenses denounced by the statute cannot be committed by a single individual. They result from the participation of two or more persons, and it were better that one of these, induced by the immunity from prosecution offered by the statute, should give his testimony as to his guilt and that of his associates, and by reason thereof be permitted to escape punishment, than that the offense should remain undisclosed and the latter escape punishment. The immunity afforded by section 1973 is a shield of protection arising out of the privilege guaranteed by section 11, Bill of Rights, which declares: .

"In all criminal prosecutions the accused has the right to be heard by himself and counsel; * * * he can not be compelled to give evidence against himself."

The right to refuse to testify against himself as to the gaming transactions about which he was asked thus guaranteed appellant by the Constitution, could not be taken from him without exempting him from prosecution for any gaming disclosed by his testimony. This was recognized by the Legislature and the intention to make the immunity absolute is unequivocally expressed in the section, supra, for its language is "and he shall be discharged from all liability for any gaming so necessarily disclosed in his testimony."

But for the immunity thus afforded by the statute it would have been unconstitutional and we would not have hesitated to so declare it.

The Constitution of the United States contains a provision similar to that found in section 11 of our Bill of Rights. In the case of Counselman v. Hitchcock, 142 U. S., 547, Counselman was summoned as a witness to testify before the grand jury in the United States District Court for the Northern District of Illinois, with respect to alleged violations of the Interstate Commerce Act. He refused to answer certain questions on the ground that the answers would incriminate him. Persisting in the refusal he was committed for contempt. He sued out a writ of habeas corpus. In deciding the case, the Supreme Court said:

"We are clearly of the opinion that no statute which leaves the party subject to prosecution after he answers the criminating question put to him, can have the effect of supplanting the privilege conferred by the Constitution of the United States. * * * The statutory enactment to be valid must afford absolute immunity against future prosecution for the offense to which the question relates." Emer's Case, 107 Mass., 172; Cullen's Case, 24 Gratt., 624; Exparte Clark, 37 Pac. Rep., 230; Kendrick v. Commonwealth, 78 Va., 493; State v. Newell, 58 N. H., 314.

The act of Congress under which the grand jury conducted the investigation in which Counselman was a witness, did not, as does our statute, afford absolute immunity to the witness, but only provided that the criminating testimony should not be used against him, hence, the opinion in the case, supra, held the statute unconstitutional.

It is, however, argued for the Commonwealth that the exemption from prosecution allowed by section 1973, of the statute, supra, does not apply to the offense for which appellant was convicted. In other words, it is contended that the exemption is only as to gaming, in which the accused engaged, as disclosed by his testimony.

It is conceded by counsel for the Commonwealth that setting up and operating the game denounced by section 1960 is gambling but insisted that it is not gaming, and that there is a distinction between "gaming" and "gambling." There is no force in this contention.

If appellant set up and carried on a poker game at which money was bet, won and lost, and out of which he received a take out, commission or profit as charged in the indictment, his acts constituted "gaming" in the

meaning of section 1973, and also "gambling." The words are synonymous, and are used interchangeable in the statute and in the opinions of this court. While it is true that in the case of Cheek v. Commonwealth, 100 Ky., 1, a distinction seems to be made in the meaning of the words "game" and "hazard," as used in the statute against gaming; it was held that the distinction lies in the broader meaning of the word "hazard," for, as there said, a wager of any kind is a hazard in the meaning of that word as used in the statute. Hazard includes "gaming," but gaming does not include "hazard." Obviously the exemption from prosecution allowed by section 973 applies to the offense of setting up and carrying on a poker game as denounced by section 1960 under which appellant was indicted.

It is also contended by counsel for the Commonwealth that the exemption provided by section 1973, does not apply to a witness testifying in a grand jury investigation. This contention is based on the theory that an investigation made by the grand jury, though it result in an indictment, is not a prosecution or any part thereof. This contention is without merit. The object of the entire statute, against gaming, is the suppression of that evil. The offense with which appellant was charged is one for which there can be neither a trial nor conviction without an indictment, which must be found and returned by the grand jury. Investigation by the grand jury must precede the finding and return of the indictment. Therefore, the investigation and indictment constitute the first step in the prosecution for the offense denounced by the section.

Section 1973 does not confine the exemption therein provided to the giving of testimony by the person accused on his trial before a petit jury, but its language is broad enough to include testimony given at any stage of the prosecution, whether in a preliminary hearing before an examining court, in an investigation by the grand jury before the finding of the indictment, or on the trial under the indictment.

By Bouvier the word "prosecution" is thus defined: "The means adopted to bring a supposed offender to justice and punishment by due course of law." In Ex parte Fagg, 44 S. W. (Tex.), 294, it is defined "to be the whole or any part of the procedure which the law provides for bringing offenders to justice." Gardner v.

State, 161 Ind., 262. In Counselman v. Hitchcock, supra, the words "criminal case," as used in the 5th amendment to the Federal Constitution, were held to apply to proceedings before the grand jury as the following excerpt from the opinion will show:

"It is entirely consistent with the language of article 5, that the privilege of not being a witness against himself, is to be exercised in a proceeding before the grand jury."

Giving, therefore, to the word "prosecution," used in section 11, of the Bill of Rights of our Constitution, its proper meaning, we feel it incumbent upon us to hold that the privilege of that section against self-incrimination extends to investigations before grand juries. This being true it is clear that section 1973 of the statute applies to investigations before grand juries. Any other construction would defeat the purpose of its enactment. Therefore, as the provisions of the statute require that appellant "shall be discharged from all liability for any gaming so necessarily disclosed in his testimony," it follows that the circuit court should have sustained his plea in abatement, or motion to dismiss the indictment, the evidence being conclusive that his testimony before the grand jury showed his participation in and guilt of the offense for which he was indicted, and that his testimony was given under compulsion.

The action of the circuit court in overruling appellant's motion to quash the indictment was a ruling which section 281, of the Criminal Code, will not permit this court to review upon appeal.

We are further of opinion that the trial court erred in permitting D. E. Pepple to testify as a witness in behalf of the Commonwealth on the trial of appellant under the indictment. The record shows that appellant testified before the grand jury against Pepple and that his testimony involved Pepple in the gaming for which appellant was indicted: moreover, that Pepple was, also, indicted upon the testimony given before the grand jury by appellant. In view of these facts, and the provision contained in section 1973 of the statute, supra, that the person against whom he (witness) testifies shall not be received to prove any gaming theretofore by such witness, it is apparent that Pepple should not have been allowed to testify.

The Legislature in thus abridging the citizen's constitutional right to remain silent where his answers

would tend to incriminate him, and in providing that one involved as a participant in the gaming disclosed by his testimony, should not be accepted as a witness against him, intended to prevent retaliation or attempt at retaliation by such person, and the trial court had no right to disregard the salutary provision in question.

The trial judge likewise erred in entering the room where the jury were deliberating, and, in the absence of accused and his counsel answering questions there propounded by the jury and giving them advice with respect to the law of the case or the verdict to be returned by them. Not only was this action of the court a violation of the provision of section 249, of the Criminal Code, which requires when the jury desires to be informed upon a point of law that they should be brought into court and the information given by the court in the presence of, or after notice to the accused and his counsel, but it was calculated to put the court in a position to be misjudged and his motive questioned. Cyc., Vol. 12, page 681; Goode v. Campbell, 14 Bush, 75.

It is proper to add that the court should have given the peremptory instruction asked by appellant.

Being entitled to an acquittal by virtue of the provisions of section 1973, of the statute, supra, and having been refused a dismissal of the indictment by the court upon the proof entitling him thereto, appellant's remaining remedy was the motion for the peremptory instruction made at the conclusion of the Commonwealth's evidence; and this he was as clearly entitled to as he was to the dismissal of the indictment on his plea in abatement.

For the reasons indicated the judgment is reversed for a new trial, and direction to the circuit court to dismiss the prosecution against him.