### Fields v. Commonwealth of Kentucky

(Decided February 6, 1913.)

### Appeal from Fayette Circuit Court.

1.  Homicide—Evidence—Sufficiency.—On a trial for homicide, evi-dence examined and held sufficient to justify a verdict of murder.

2.  Homicide—Courts—Jurisdiction.—Where the deceased is shot in one county, the court of that county has jurisdiction of the offense, it matters not where he may have died.

3.  Homicide—Death Within a Year and a Day—Evidence—Suffi-ciency.—Where appellant was indicted for murder on May 2, 1912, and tried during the month of October, 1912, and there was evidence to the effect that the shooting took place "in last April past," and that the coroner held an inquest over the body of the deceased before the trial and gave as his opinion that he died from a gunshot wound, the evidence was sufficient to show that deceased died within a year and a day from the time he was shot.

S. S. YANTIS, for appellant.

JAMES GARNETT, Attorney-General, D. O. MYATT, Assistant Attorney-General, for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COM-MISSIONER.—Affirming.

In the month of April, 1912, Willie Fields shot and killed Will Graham. On May 2, 1912, the grand jury of Fayette county returned an indictment against Fields charging him with the crime of murder. The case was continued until the October term of the Fayette circuit

court, when a trial was had. The jury found Fields guilty of murder and fixed his punishment at imprisonment for life. Judgment was entered accordingly, and he appeals.

Two errors are relied on for reversal: (1) The verdict of the jury is flagrantly against the evidence; (2) the proof fails to show that the deceased died within a year and a day.

1. According to the evidence for the Commonwealth, the homicide took place about 9:30 o'clock on Saturday night, April 27, 1912. About 9 o'clock on that night John Briggs, who was tending bar in a saloon on Spring and Main streets in Lexington, returned from supper. As he entered the saloon, he met the appellant going out. In about a half an hour appellant returned, and was standing at the door talking to Briggs, when the deceased, Will Graham, who had been sitting on a beer keg in the saloon, came up to the counter and called for coco-cola and whiskey. Appellant said: "There is a nigger that mistreated me." As he said this he drew his pistol and shot Graham. Graham immediately fell to the floor, and one of the bystanders, Frank Morton, caught the appellant just as he was in the act of firing a second shot. Graham was carried out into the yard, where he remained until a wagon came and got him. He was then carried to the hospital. There is also some evidence to the effect that prior to the time of the difficulty, appellant and Graham had been engaged with others in a game of cards. In this game they played for chips, which were cashed at the bar. Some four or five witnesses testified for the Commonwealth, and their evidence is substantially as above indicated. The coroner of Fayette county testified that he held an inquest over Graham, and that he died from the effect of his wounds. This inquest was held prior to the time that the trial took place, though the coroner did not fix the date.

Appellant testified that at the time of the shooting there were 40 or 50 men in the bar. The place was crowded. It was about half past eight or nine o'clock when he went into the bar. At that time Will Graham was playing cards. During the progress of this game he and Graham had some dispute, and Graham cursed him and threatened him. Appellant had loaned one of the players a nickel. This player won. The crowd then

got up from the table, and went to the counter to get the drinks. Graham followed them to the counter. Graham called appellant a vile epithet and said "I will cut your head off and beat you up." Graham then ran his hands into the pocket of his overalls. When he did that appellant drew his pistol and shot Graham. Graham had previously threatened appellant, and that was the reason the game broke up. When Graham said "I will kill you" appellant did not know what he was going to do, and appellant pulled his pistol and shot him. Appellant said he was not carrying his pistol for any serious purpose. No other witness testified for appellant. In rebuttal several witnesses were called who claimed that they heard no quarrel or dispute between appellant and deceased, and that the circumstances attending the shooting were not as detailed by appellant.

It is earnestly insisted that appellant, if guilty at all, is guilty of manslaughter only. The only evidence tending to make out a case of manslaughter is the evidence of appellant himself. He is not corroborated by any other witness. The fact that he was unable out of the large number of persons present to get a single witness to corroborate him makes his story very improbable. The credibility of a witness is for the jury, and it is difficult to see how the jury could have done otherwise than reject his testimony. On the other hand, the overwhelming weight of the evidence is that deceased made no insulting remarks of any kind to appellant, and made no attempt to assault him. Deceased was unarmed. Appellant said in substance: "There is a nigger that mistreated me;" and immediately shot deceased. It is well settled that a jury may infer malice from the facts and circumstances attending the homicide; and the intentional killing of another without legal justification or excuse is sufficient to justify the inference of malice. By "malice aforethought" is meant a predetermination to do the act of killing, without legal excuse, and it is immaterial at what time before the killing such a determination was formed. Jolly v. Commonwealth, 110 Ky., 190; Burns v. Commonwealth, 136 Ky., 468; Farris v. Commonwealth, 14 Bush, 370. If the evidence for the Commonwealth is to be believed, appellant killed deceased without any reasonable provocation, and at a time when he had no reasonable grounds to believe that he was in danger of death or great bodily harm at the

hands of the deceased. Under these circumstances the jury were justified in finding him guilty of murder.

2. But it is insisted that the evidence fails to show that the deceased died in Fayette county or within a year and a day from the time of the shooting. The first witness testified that the shooting took place in Lexington, Fayette county, Kentucky. The crime having been committed in Fayette county, it is immaterial where the deceased died. Atkins v. Commonwealth, 148 Ky., 207.

The other contention of the appellant is equally untenable. On this question John Briggs testified as follows:

"Q. This defendant is charged with killing Will Graham. When did this occur?

A. It was on Saturday night, somewhere along about the 27th of April—somewhere along there.

Q. It was before you went before the grand jury?

A. Yes, sir."

Frank Morton said that the shooting occurred "in the last April past—I disremember the date." The indictment was returned on May 2, 1912. The trial took place on October 9, 1912. J. D. Kiser, Coroner of Fayette county, testified that he held an inquest over the body of Will Graham. He found only one wound in his body, and in his opinion that wound caused his death. Here, then, we have one witness who gave his testimony in the month of October, 1912, saying that the difficulty occurred "last April past." All the witnesses testify that Graham was shot once. The coroner testifies that he held an inquest over his body, and in his opinion Graham died from the gun-shot wound. The trial occurred in October, 1912, and the difficulty took place in the preceding April, and as the deceased was dead at the time of the trial, it necessarily follows that he died within a year and a day from the time he was shot.

Judgment affirmed.