# Fitzpatrick v. Commonwealth.

(Decided Sept. 30, 1932.)

H. H. RAMEY, A. J. MAY, E. B. ARNETT and LEEBURN ALLEN for appellant.

BAILEY P. WOOTTON, Attorney General, and FRANCIS M. BURKE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY HOBSON, COMMISSIONER— Affirming.

Clay Fitzpatrick was indicted in the Magoffin circuit court for the malicious shooting and wounding of Alex Bailey with intent to kill him. On the trial of the case he was found guilty and his punishment fixed at five years' imprisonment. He appeals.

Two grounds of reversal are relied on: (1) The verdict is flagrantly against the evidence. (2) The court did not properly instruct the jury.

1. Fitzpatrick was employed as a night watchman at a lumber mill at Royalton in Magoffin county. Alex Bailey was the operator of a taxicab there. On July 5, 1931, Bailey was at the mouth of Puncheon creek, about three miles from Royalton, and there took his friend Fitzpatrick into his car as he was returning to Royalton. The road ran past the house of Bailey as they approached Royalton; the road being on one side of the Licking river and Bailey's house about 50 yards

from the road on the other side, the river at this point being very small. Both the parties were drinking. The evidence is conflicting as to what occured. The proof for the commonwealth, briefly put, was this: Bailey stopped opposite his house and called to his wife. She came over to the car, took the keys of the car, and insisted that Bailey should get out and go over to the house and eat supper. They had supper ready. Bailey had an engagement to be back at 5 o'clock to get some passengers and hesitated to get out. Finally Bailey got out and asked Fitzpatrick to get out and go over and eat supper with him. Fitzpatrick declined to do this, and Mrs. Bailey said: "Well Clay you just stay in the car until he goes and eats supper then he can come back and take you where you want to go." Bailey started away; Fitzpatrick got out of the car, cursed Mrs. Bailey, drew his pistol, and was advancing on her. Bailey looked back and said, "Clay don't shoot Hazel." Fitzpatrick turned the pistol on Bailey and shot Bailey, inflicting a very painful wound in the back of his leg. He then fired a number of other shots from the pistol, none of which struck either Bailey or his wife. Neither Bailey nor his wife had a weapon of any kind and Mrs. Bailey had offered no violence to Fitzpatrick, and their testimony is confirmed by two or three neighbors who were near by.

On the other hand, the defendant testified that Bailey's wife came to the car, took the keys from him, and they got into a difficulty with each other. She said that Bailey was drunk and was not in shape to go on after the parties he referred to. Fitzpatrick got out of the car, drew his pistol, and pushed Mrs. Bailey back. When he pushed her back she started towards the house and Bailey hollered for his pistol and started running, and when Bailey did that Fitzpatrick shot into the ground for the purpose of stopping him, as he did not want him to get to the house and get his gun. There was a woman over there across the river and a couple of shots were fired there before he fired his pistol. He did not shoot at Bailey, but aimed to shoot in the ground directly behind him and had no intention of shooting him. On his cross-examination Fitzpatrick made these statements:

"Q. Why were you shoving Mrs. Bailey? A. Well, I wanted to keep a racket down.

"Q. Why didn't you shove Mr. Bailey instead of Mrs. Bailey. A. I just kind of pushed her back I didn't mean—

"Q. She had no weapon of any kind that you saw? A. No sir, not as I saw.

"Q. You had not heard anything said about a pistol at the time, between her and Alex Bailey? A. No, sir.

"Q. You had not seen either one with a pistol? A. There was two shots fired across the river.

"Q. Before you came around there and shoved Mrs. Bailey? A. Yes, sir.

"Q. They were not fired at you were they? A. I don't know.

"Q. You didn't know who fired them? A. I did not.

"Q. That is not the reason why you shot Alex Bailey? A. No sir, I shot Alex Bailey to keep him from getting his gun."

In rebuttal the commonwealth proved that the shots across the river were fired by Grace Salyer, who was not in the difficulty, and were fired in the air after Bailey was shot to get an officer to come; she being behind some bushes 50 yards away which concealed her from those at the car.

It is well settled that malice may be presumed from wanton use of a deadly weapon and may be inferred from the accused's actions in the commission of the offense. Burns v. Com., 136 Ky. 468, 124 S. W. 409; Fields v. Com., 152 Ky. 80, 153 S. W. 29; Bentley v. Com., 216 Ky. 665, 288 S. W. 295; Fleenor v. Com., 221 Ky. 175, 298 S. W. 376. If the evidence of the commonwealth was true, appellant was without justification in firing his pistol. He not only fired the shot that struck Bailey, but continued to shoot until he had emptied his pistol. The facts shown clearly presented a case for the jury. A jury's verdict will not be disturbed on the facts unless palpably against the evidence, and that clearly is not the case here.

2. Two objections are made to the court's instructions to the jury. By instruction 4 the court told the jury, in substance, to find the defendant not guilty on the ground of self-defense if at the time he shot Bailey he had reasonable grounds to believe that he was in

danger of death or great bodily harm at the hands of Alex Bailey. By instruction 5 the court told the jury that if upon the whole case they had a reasonable doubt of the guilt of the accused or of any material fact necessary to constitute his guilt, they should find him not guilty. It is insisted for appellant that the court erred in not submitting to the jury the question whether the defendant had reasonable grounds to believe he was in danger at the hands of Mrs. Bailey or Mrs. Salyer, and that the fifth instruction failed to adequately tell the jury that if appellant had not been proved guilty beyond a reasonable doubt he should be acquitted.

There was no evidence that Mrs. Bailey was armed or that the appellant was in any danger at her hands. Mrs. Salyer was not in the difficulty; she was fifty yards away and behind some bushes. The defendant had not seen her and he had no reason to anticipate danger at her hands. As shown above, when asked the reason why he shot Bailey he answered: "I shot Alex Bailey to keep him from getting his gun." This was the only defense he made to the prosecution and that was clearly submitted to the jury by the instruction. The Code (Criminal Code of Practice, sec. 271) provides that a new trial shall not be granted in cases like this, unless for an error to the prejudice of the defendant's substantial rights. Clearly there was no prejudice to the defendant's substantial rights by the instruction.

Section 238 of the Criminal Code of Practice provides that if there be a reasonable doubt of the defendant being proved to be guilty he is entitled to an acquittal. The instruction of the court plainly told the jury that if upon the whole case they had a reasonable doubt of the guilt of the accused they should find him not guilty. The words "upon the whole case," in the instruction, were equivalent to the words "under the evidence," for the jury were sworn to render a true verdict under the evidence and could only consider it. Clearly the jury could not have misunderstood the instruction of the court.

Judgment affirmed.