## Harper v. Commonwealth.

(Decided Sept. 28, 1934.)

V. R. LOGAN for appellant.

BAILEY P. WOOTTON, Attorney General, and H. H. RICE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

At the trial of an indictment in the Edmonson circuit court charging appellant and defendant below, Guy Harper, with the offense of malicious cutting and wounding Herschel Wolf (from which he recovered), the accused was convicted and punished by confinement in the penitentiary for one year. His motion for a new trial complained of a number of alleged errors of the court, but the court overruled it and pronounced judgment on the verdict, from which this appeal is prosecuted.

The new trial was sought upon these grounds: (1) The admission of incompetent evidence over defendant's objections; (2) refusal of the court to admit competent evidence offered by defendant; (3) error in overruling demurrer to the indictment; (4) incompetent and prejudicial remarks made by commonwealth's attorney in his closing argument to the jury; (5) error of the court in permitting the commonwealth to introduce and examine Mrs. Ben Pigeon after defendant had closed his evidence, and (6) refusal of the court to discharge the jury at the close of her testimony.

The brief for appellant says: "We complained of several things in the motion and grounds for a new trial, but we regard none of them as being as serious as the two questions we will present to the Court." Counsel then proceeds to discuss in his brief only the facts supporting grounds 5 and 6 and dismissing, so to speak, without comment the first four alleged errors contained in the motion for a new trial, and which course we are

convinced is abundantly sustained by the record, since the four grounds not discussed and so impliedly abandoned, if errors at all, were wholly immaterial and clearly nonprejudicial, and at least one of which (No. 4) is not presented to this court in the way and manner prescribed by the practice so as to authorize us to take cognizance of it. It only appears in the motion for a new trial, which we have declared in almost numberless cases is not sufficient to present the question so complained of to this court for review on appeal. Such matters must be contained in the duly certified bill of exceptions, which we have reiterated so often that we deem it a waste of time and space to cite supporting cases. As to the other three grounds, impliedly abandoned by defendant's counsel, we feel it incumbent upon us to only say that we have searched the record for any error in the admission or rejection of testimony. In some instances the court declined to permit a question propounded by defendant's counsel to be answered by the witness, but no avowal appears as to what the answer of the witness would be, and we have written in an unbroken line of cases that without such an avowal we would take no cognizance of the alleged error.

We are thus brought to a consideration of grounds 5 and 6, each of which counsel does discuss in his brief. They are rested upon these happenings appearing in the record: Defendant filed an affidavit for a continuance upon the ground that two of his subpœnaed witnesses were absent, one of whom was Mrs. Ben Pigeon. Defendant testified that he stabbed and wounded the prosecuting witness in his necessary self-defense and possibly in the defense of his friend and companion, Homer Cassidy. The stabbing with which defendant is charged occurred on the August primary election day in 1933 at a voting precinct in Edmonson county in which Wolf was serving as clerk of the election. At an early hour in the morning Cassidy and Harper appeared on the grounds near the schoolhouse in which the election was being held, and the former was drinking and cursing and directing much scurrilous and threatening language to the prosecuting witness, Wolf, who for more than an hour continued to discharge his duties as clerk of the election and seemingly took no notice of nor any action concerning the scurrilous language and threats of Cassidy. During that time another election officer procured defendant to endeavor to take Cassidy away, but he

would immediately return and resume uttering his profanity and threats toward Wolf, and perhaps others. Eventually Wolf went out where Cassidy was and, as he says, Cassidy approached him in such a threatening manner as to cause Wolf to strike him with his fist, knocking him down, and while down Wolf kicked him once and turned around to go back into the schoolhouse to resume his duties as clerk of the election. But as he was returning and had gotten some ten feet or more from Cassidy, defendant in a crouched position rushed by him and inflicted the knife wound on the side of his neck, which was a gash three-fourths of an inch deep and about four inches long; that he said nothing to, made no demonstrations towards, nor in any wise attempted to inflict any harm on defendant, nor did he know of the latter's presence or purpose until the wound was inflicted. Several witnesses who were present corroborated, in the main, the testimony of Wolf, with the exception that some of them said that the wound was inflicted about the time Wolf had taken one or two steps upon his return to the schoolhouse, instead of his traveling ten or twelve feet as he said in his testimony. Defendant did not materially contradict the testimony of the prosecuting witness, except he stated that Wolf, as he (defendant) passed out of the schoolhouse (into which he had gone for a drink of water), approached him in a threatening manner so as to create in his mind the reasonable belief that his victim intended to inflict personal harm upon defendant and that he stabbed Wolf in his necessary or apparently necessary self-defense.

In his affidavit he stated that Mrs. Ben Pigeon, one of his absent witnesses, would state that she saw the whole transaction and that the facts to which she would testify supported defendant's theory of self-defense. Upon the completion of defendant's testimony, and before any other step in the trial was taken, Mrs. Pigeon made her appearance and the commonwealth asked permission to introduce her, to which defendant objected, but which the court overruled. She testified that at the time of the difficulty she was in the schoolhouse and that she saw none of the difficulty and denied her testimony as contained in defendant's affidavit. Thereupon counsel for defendant moved to exclude her testimony, which was overruled with exceptions, and he then moved that

the jury be discharged and the case continued, which was also overruled with exceptions.

In discussing such actions of the court, embraced as we have stated by grounds 5 and 6, it will clearly appear that if the argument in support of ground 5 is not sustainable because the court did not err in permitting Mrs. Pigeon to testify under the outlined circumstances, then ground 6 vanishes as wholly immaterial and unmeritorious. We will therefore direct our discussion exclusively to ground 5.

Section 189 of our Criminal Code of Practice permits the commonwealth to avoid an application for a continuance of the trial of a defendant in a criminal prosecution, because of the absence of material witnesses, if the prosecutor will agree that the absent witness would testify as stated in the affidavit if he was present, and in which event the affidavit may be read by the defendant "as the deposition of such absent witness." But the section continues by saying that "the attorney for the Commonwealth shall [in such case] be permitted to controvert the statement of such affidavit so read by other evidence, and to impeach such absent witness or witnesses to the same extent as if he were personally present." Under that permission, so expressly contained in the section, it is, to say the least of it, extremely doubtful that the court erred in permitting the commonwealth to introduce Mrs. Ben Pigeon in the manner and at the time complained of, since defendant's affidavit concerning her testimony is only given the effect of being her deposition, and which the commonwealth might impeach and controvert "to the same extent as if he [the witness] were personally present." If Mrs. Pigeon had personally testified in behalf of defendant, as set out in his affidavit, and had later retracted her testimony, we are clearly of the opinion that the commonwealth would have the right to introduce her and prove such retraction.

But whether such a course would be permissible or not, or whether as an original proposition the section should be so construed, is now water that has passed the mill, in view of our holding in the case of Elkin's Adm'r v. New Livingston Coal Co., 115 S. W. 203, 204 (not elsewhere reported). We have often held that the provisions of the Civil Code of Practice, with reference to continuances of the trial of civil causes, apply in the

trial of criminal prosecutions to the extent that they are not interdicted by provisions especially applicable to the trial of prosecutions. Pursuant thereto it has been held in both criminal and civil causes that a witness whose statements reach the jury only through an affidavit for a continuance may not be impeached by showing that he made contradictory statements at other times and places; but that was upon the ground that before such impeaching testimony may be introduced the ground therefor must be laid by first asking the witness if he had not made such contradictory statements, followed by his denial. But under the Civil Code of Practice section (315) relating to the subject, as well as under section 189 of the Criminal Code of Practice, supra, other methods of impeaching the statements of the absent witness, requiring no preliminary steps or action as a foundation for impeachment, may be employed. An illustration is the Elkin's Adm'r Case, supra, wherein the same question now presented arose and was relied on as a ground for reversing the judgment; but we disallowed it, and in doing so said: "When the statements of the affidavit had been read to the jury, as the depositions of the witnesses, and the witnesses subsequently came into the courtroom, the court properly allowed the defendant to introduce the witnesses and cross-examine them on the statements contained in the affidavit which had been read as their deposition. The provision of law that the affidavit may be read as the deposition of the absent witness is not infringed by allowing the adverse party to cross-examine the witness if his presence is obtained during the trial. The court may in furtherance of justice allow a witness to be cross-examined at any time during the trial, and there is no reason why he may not do this where the witness has not testified in person, but where the statements in an affidavit for a continuance have been read as his deposition." We regard that ruling as not only sound, but also as determining this ground adversely to the contention of defendant's counsel.

But it is also insisted in support of this ground that, although it might be held competent for the commonwealth to introduce and cross-examine Mrs. Pigeon, it was nevertheless error of the court to permit the introduction of her testimony after both sides had announced closed, although no further progress of the trial had been made. But it will be observed that the

commonwealth made only one announcement that its testimony was closed, and which was the one following its testimony in chief. If, however, it were otherwise and the prosecuting attorney had announced at the close of the defendant's testimony that he would introduce no rebuttal testimony (which embraces all impeaching testimony), then we have frequently held that the court in the exercise of a sound discretion may permit the introduction of further or rebuttal testimony by the commonwealth, and unless such discretion was abused the error (conceding it to be one) would not authorize a reversal of the judgment. See Martin v. Commonwealth, 145 Ky. 752, 141 S. W. 54, and Berkley v. Commonwealth, 164 Ky. 191, 175 S. W. 364. There are numerous other cases to the same effect preceding and following those opinions. In this case in view of the great number of witnesses contradicting the affidavit as to what the testimony of Mrs. Pigeon would be, and in view of the testimony of defendant himself at least partially contradictory of such statements in the affidavit, we are constrained to the conclusion that the court did not err in permitting the otherwise competent testimony of Mrs. Pigeon to be introduced at the time it was done. Defendant made no announcement of surprise following her testimony, and he took no steps to obtain time within which to obtain or present proof that her testimony contradicting the statements in the affidavit was false, or to nullify its effect other than the motion for a discharge of the jury. If defendant had manifested to the court that he had been misled into making the statements he did in his affidavit with reference to the testimony of Mrs. Pigeon, and he had sought time within which to develop the facts proving his innocency, then there would be much stronger ground for the argument that he was prejudiced by the court's ruling. But no such manifestation was made, or attempted to be made, and for the reasons we have stated we are forced to the conclusion that neither grounds 5 nor 6 are substantial.

Wherefore, the judgment is affirmed.