## Nelson v. Commonwealth.

Feb. 4, 1944.

Sidney Trivette for appellant.

Hubert Meredith, Attorney General, and W. Owen Keller, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE SIMS—Affirming.

Appellant, Tommy Nelson, was indicted by the grand jury of the Letcher Circuit Court for the willful murder of Frelin Estep. A change of venue was granted and his trial in the Pike Circuit Court resulted in a conviction with his punishment fixed at death.

A reversal of the judgment is sought on four grounds: 1. The court did not alternate the arguments as provided by Sec. 228 of the Criminal Code of Practice, nor did he equally divide the time for argument and failed to allow appellant sufficient time; 2. improper argument was made on behalf of the Commonwealth; 3. no malice was shown and the conviction should have been for voluntary manslaughter and not murder; 4. an instruction should have been given on voluntary drunkenness.

Nelson, an ex-convict from West Virginia, was 35 years of age at the time of the homicide. On the night of October 7, 1943, he and his wife, Kate, met Frelin Estep and Claude Isom at a roadhouse operated by Sam Bates at Tunnel Hill near Whitesburg in Letcher County. Estep and Isom were coal miners and had no previous acquaintance with Nelson or his wife. Some beer was consumed by these four persons in the roadhouse and previous to meeting up with the two miners the Nelsons had partaken of a quart of wine and a pint of gin. In the presence of the others while in the roadhouse Estep had a $20 bill broken to obtain some small change with which to play a music-box.

Between 8 and 9 o'clock Isom asked Nelson if he could ride with the latter in his automobile to Millstone. Consent was given and he and Estep got in the back of the car, which was a two-door Ford coach, and Nelson drove with his wife seated beside him. There is a conflict in the evidence as to what happened when the car reached Millstone.

Isom testified that something was said by Nelson

about going on to Shelby Gap or to Neon to get some whiskey; that he (Isom) insisted on getting out of the car as he had to report for work. Nelson stopped the car and with these words, "If you fellows ain't going with me take this," started shooting. Nelson fired six times and Isom was shot in his left shoulder as he was getting out of the car and fell from the running board.

Estep was killed with a shot through his head. Nelson drove the car down the road about three-quarters of a mile, removed Estep's body from the back seat and placed it off the side of the road. Kate testified she saw her husband take deceased's pocketbook from which he removed a $10 bill, some $2 bills and $1 bills and then threw the pocketbook away. Her testimony corroborated Isom's in that Nelson began firing without provocation about the time he stopped the car.

Appellant's testimony is to the effect that he had two half-pints of whiskey on the front seat of the car between him and his wife and when something was said by Estep about driving on to Neon to get whiskey, he told Estep that he had liquor and would give him a drink; that he could not locate the whiskey and his wife spoke up and said her pocketbook and money were gone. Thereupon, the two men on the back seat started cursing and he told them to leave the car. One of them then hit him on the shoulder and Estep reached for a .22 caliber rifle which Nelson had under the floor mat in the back of the car, and he (Nelson) fired six times at the two men in self-defense. He denied taking Estep's pocketbook or money upon removing his body from the car.

Nelson admitted escaping from a highway patrol officer who came up to his car after the killing. The officer shot down two tires on Nelson's car when the latter made his escape, and he soon deserted his car and took to the hills. Nelson was captured on a bus a couple of days later while making his way to Virginia. The fact that Nelson escaped from the highway patrolman soon after the shooting was not inclined to strengthen in the minds of the jury his rather weak plea of sell-defense. And his testimony was not convincing as to where he obtained the money found on him when arrested. The jury evidently reached the conclusion that appellant's motive for killing Estep was robbery.

It is not insisted that the verdict is flagrantly against

the evidence. Appellant appears to realize that it was within the province of the jury to accept his version of the killing and acquit him on the ground of self-defense, or to accept as true the evidence of the Commonwealth and convict him of willful murder. His chief ground for reversal rests on the manner in which the court permitted the arguments to be conducted. There were three arguments, one for the defense and two for the Commonwalth. Complaint is made that the court erred in requiring the defense to open and in allowing both arguments offered on behalf of the Commonwealth to follow the one for the defense; that defense counsel was allowed only forty-five minutes in which to present his argument, while the Commonwealth was permitted to argue the case for ninety minutes. Appellant further complains that improper remarks were made to the jury in the course of the arguments for the Commonwealth.

Section 228 of the Criminal Code of Practice reads: "If more than one counsel on each side argue the case they shall do so alternately." As there was only one argument in his behalf, appellant insists in his brief that under this section of the Criminal Code of Practice, as construed in Kammerer v. Com., 137 Ky. 315, 125 S. W. 723, the court should have on his motion required the Commonwealth to open and close the argument. But there is nothing in the record showing appellant moved the court to alternate the arguments, or that the court refused to do so. Nor is there anything in the record to show that the court limited appellant's argument to forty-five minutes and allowed the Commonwealth twice that time. The alleged improper argument is not set out in the bill of exceptions and the only thing included therein is the transcript of the testimony and the instructions. Therefore, we do not have before us what transpired on the trial and there is nothing in the record showing any prejudicial error was committed against appellant. Some of the alleged errors are contained in the motion and grounds for a new trial but objections come too late and are waived when presented for the first time in the motion for a new trial. Pennington v. Com., 262 Ky. 707, 91 S. W. (2d) 21; Fowler v. Com., 260 Ky. 433, 86 S. W. (2d) 148; Chism v. Com., 286 Ky. 314, 150 S. W. (2d) 694.

We have many times written that errors occuring on the trial cannot be brought to this court for review by

including them in a motion for a new trial, but that the proper way to bring such errors before us is to incorporate them into the record through a duly authenticated bill of exceptions signed and approved by the presiding judge. As the order of the argument, the duration thereof and the alleged objectionable remarks imputed to the attorneys representing the Commonwealth were not included in the bill of exceptions, or made a part of the record by an order, we are without authority to consider them. Alsept v. Com., 240 Ky. 395, 42 S. W. (2d) 517; Harper v. Com., 255 Ky. 566, 74 S. W. (2d) 951; Vontrees v. Com., 291 Ky. 583, 165 S. W. (2d) 145; Cannon v. Com., 291 Ky. 517, 165 S. W. (2d) 44.

We cannot agree with appellant that the record shows the shooting was without malice on his part, therefore he should have been convicted of voluntary manslaughter instead of murder. In many cases we have written that malice may be presumed in the wanton use of a deadly weapon, and here malice certainly may be inferred from Nelson's actions in the commission of the offense. Fitzpatrick v. Com., 245 Ky. 108, 53 S. W. (2d) 221; Woods v. Com., 282 Ky. 596, 139 S. W. (2d) 439.

The question is properly raised as to whether the court should have instructed on voluntary drunkenness, not as a defense but that the jury might consider it in determining whether appellant acted with malice aforethought or in sudden heat of passion. In the instant case drunkenness would not have entitled Nelson to an acquittal but it only could have reduced his crime from murder to voluntary manslaughter, which latter offense was included in the instructions. Therefore, the court did not err in failing to give a specific instruction on the legal effect of appellant's drunkenness. Richardson v. Com., 284 Ky. 319, 144 S. W. (2d) 492; Chism v. Com., 286 Ky. 314, 150 S. W. (2d) 694.

We find no prejudicial error in the record, therefore the judgment is affirmed.

Whole Court sitting.