Bart SMITH, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

March 6, 1959.

Lewis & Weaver, Ray C. Lewis, London, for appellant.

Jo M. Ferguson, Atty. Gen., William L. Brooks, Asst. Atty. Gen., for appellee.

SIMS, Judge.

The 2-ton coal truck of defendant, Bart Smith, collided with a pickup truck owned and driven by Henry Wells. Mrs. Wells was riding with her husband and she was instantly killed in the collision. Smith was convicted of voluntary manslaughter and sentenced to five years in the penitentiary. On this appeal he seeks a reversal of the judgment because he contends the court erred in: 1. Overruling his demurrer to the indictment; 2. overruling his objection to certain testimony of the Commonwealth; 3. overruling his motion for continuance; 4. going in the jury room and "talking to the jury about their verdict in defendant's absence."

The accident happened between 4 and 5 o'clock on Sunday afternoon, April 13, 1958, on highway No. 80 near the Big Creek Bridge in Clay County. The Wellses were traveling west and Smith was alone in his unloaded coal truck traveling east. According to Wells, Smith came around a steep curve, "as fast as he could run" on Smith's left side of the road. Smith admitted that "about half of his truck was over the yellow line," while some of the witnesses for the Commonwealth placed it entirely to the left of the yellow line. When he saw the approaching Wells truck, Smith attempted to cut his truck to his right but says the steering gear failed to work. He then stepped on his brake, which caused the truck to come back to its right side of the road. He testified that Wells tried to dodge him, pulled the pickup to the left and the trucks hit "head-on" near the

center of the highway. Smith's testimony is that his truck was in good mechanical shape when he looked it over a few hours before the collision and he did not know why the steering gear did not work at the time of the accident. Several of his witnesses testified they examined the steering wheel of Smith's truck immediately after the accident and it would turn without moving the front wheels.

The Commonwealth proved by several witnesses who saw and talked to Smith at the scene of the accident that he was "drunk", "smelled of liquor", "talked and acted like he was drinking"; while practically as many witnesses for Smith, who had as good an opportunity as the Commonwealth's witnesses to observe and determine his condition, testified he was sober; that he did not appear to have been drinking and they did not smell liquor on him. The testimony is even contradictory as to whether Smith removed a pint and a half-pint bottle (both empty but smelling of moonshine) from his truck immediately after the collision. Smith testified the collision knocked him out.

■ The criticism of the indictment is that it is duplicitous and charges Smith with both voluntary manslaughter and murder. The accusatory part expressly charges voluntary manslaughter and the following paragraphs are descriptive and state he killed Mrs. Wells by the reckless manner in which he operated his truck. Even had the indictment charged both voluntary manslaughter and murder and had the court erred in not sustaining a general demurrer thereto, Smith would not have been prejudiced since the court only instructed on voluntary manslaughter and the lesser degrees of that offense. Herron v. Com., 247 Ky. 220, 56 S.W.2d 974.

■■ The chief ground relied upon for a continuance is that the Commonwealth did not furnish defense counsel a transcript of the evidence heard by the grand jury until the day of the trial. It is argued this transcript was needed in the preparation of defendant's case, especially in view of the fact that certain tests were made at the hospital to determine whether or not Smith's blood showed he was intoxicated, as defense counsel wanted to be prepared to refute such testimony. There was no testimony of blood tests introduced by the Commonwealth, hence Smith could not have been prejudiced. Besides, § 110 of the Criminal Code of Practice provides any person indicted has a right to the transcript of the testimony heard before the grand jury, or any part thereof, by paying the prescribed fee. Smith never tendered the fee, therefore he is in no position to complain.

■■ The indictment was returned May 12, and the trial was held June 4, 1958, which gave defense counsel slightly more than three weeks to prepare for trial, which the presiding judge deemed sufficient. A trial judge's discretion in granting or refusing a continuance will not be disturbed on appeal unless it clearly appears such discretion was abused. Chinn v. Com., Ky., 310 S.W.2d 65.

■ There is no merit in Smith's objection to the competency of the Commonwealth's testimony that he was drinking or drunk on the occasion of the accident. Most of these witnesses knew Smith and gave their reasons for testifying as to his condition of sobriety. True, none of them were asked the question as to whether or not he was intoxicated to the extent that it would have affected his driving. We have written that drinking, though not to the extent of intoxication, begets a spirit of recklessness and is responsible for numerous accidents. Robinson & Son v. Jones, 254 Ky. 637, 72 S.W.2d 16. In Toppass v. Perkins' Adm'x, 268 Ky. 186, 104 S.W.2d 423, we held it competent to prove that the driver involved in an accident was drinking or was under the influence of intoxi-

cants. Such evidence should go to the jury in connection with other evidence of negligence and contributory negligence, for the jury to determine whether or not the driver was intoxicated to the extent that it affected his driving.

Both the motion and grounds for a new trial and the bill of exceptions show that after the jury had been considering the case for something over two hours, one of the jurors came out of the jury room and reported to the judge they were hung. The judge immediately entered the jury room and took with him counsel for the Commonwealth and for the defendant, but not the defendant himself. After going in the jury room and closing the door, a member of the jury told the judge they were hung 11 to 1, but did not report how they stood. Thereupon, the judge said to the jury: "It is important that verdicts be made in these cases and in order to do this persons would have to respect the opinions of others and that if a verdict could be reached it should be done." He told the jury to continue their deliberations and then the judge and counsel left the jury room. In about ten minutes the jury returned a verdict of guilty.

This conduct of the judge was highly improper and was prejudicial to defendant. A presiding judge should never invade the privacy of the jury room while that body is deliberating on its verdict. Criminal Code of Practice, § 249; Puckett v. Com., 200 Ky. 509, 255 S.W. 125, 34 A. L.R. 96; Bentler v. Com., 143 Ky. 503, 136 S.W. 896; Byerley v. Com., 297 Ky. 782, 181 S.W.2d 429.

It behooves a trial judge to be most careful in what he says to a jury when it appears that body may be hung and he seeks to have them reach a verdict. And what he says to the jury should always be in open court. There is no set language he may use on such an occasion and of necessity that must be left to his own judgment.

A presiding judge should never inquire, or let the jury inform him, how it stands when it is apparently hung. He should always bear in mind his words and actions have great weight with jurors. Burnam v. Com., 283 Ky. 361, 141 S.W.2d 282; Sandefur v. Com., 143 Ky. 655, 137 S.W. 504. Authorities are cited in the Sandefur opinion showing the limits to which a judge can go in requesting a jury to reach a verdict and beyond which with propriety he should not go. Should a juror blurt out that the jury is hung 11 to 1, the judge should be loathe to say anything to them further than, "retire and continue your deliberations in trying to reach a verdict." When the jury stood 11 to 1 and the judge told them that in reaching a verdict they must respect the opinions of others, it was almost tantamount to telling the hold-out juror that he should agree with the other eleven, as, from a practical point, it is known that the eleven will not come over to the lone juror.

In the instant case counsel for defendant had entered the jury room with the judge and heard everything which transpired, yet he never voiced an objection before the judge entered the jury room nor after he returned therefrom. His first objection appears on his motion for a new trial. It would not be expected of counsel that he make his objection in the jury room to the judge entering it, or to what he said in the presence of the jury. But he should have objected when the judge made it known he was going to enter the jury room. Certainly, he should have objected when the judge returned therefrom and after counsel knew what had transpired therein, and his objection should have been accompanied by a motion to discharge the jury.

We have written many times that objections come too late and are waived when presented for the first time upon motion for a new trial. Chism v. Com., 286 Ky. 314, 150 S.W.2d 694; Nelson v. Com., 297 Ky. 189, 179 S.W.2d 445, and numerous author-

ities therein cited. It would appear in this instance that counsel speculated on the outcome of the verdict when he learned the jury stood 11 to 1, and then after it went against his client, he complained thereof for the first time in his motion for a new trial. This he cannot do. Sawyer v. Com., 227 Ky. 435, 13 S.W.2d 267; Belcher v. Com., 247 Ky. 831, 57 S.W.2d 988, 992.

The judgment is affirmed.