## Gordon v. Tracy, Judge, etc.

(Decided March 10, 1922.)

### Petition for Writ of Prohibition.

1. Grand Jury—Witnesses—Attendance and Examination Before Grand Jury.—A witness summoned before the grand jury will not be excused from giving testimony respecting violations of the criminal or penal laws of the state, upon the ground that to do so might injure him in his business or in the estimation of his friends; and a constitutional provision that "no person shall be

compelled to furnish evidence against himself" does not relate to questions of property or business, or to the protection of other persons by the witness.

2.  Prohibition—Refusal of Witness to Answer Question Propounded by Grand Jury—Contempt.—Where upon the refusal of a witness to answer a question propounded to him by the grand jury, he is taken by that body into the presence of the court, which, upon hearing from the foreman of the grand jury the question asked the witness and of his refusal to answer it, and from the latter his reasons for such refusal, rules that the question must be answered or the witness would be dealt with as for a contempt of court, such witness will not, upon his petition therefor, be awarded by the Court of Appeals a writ of prohibition to restrain the lower court from compelling him to answer the question asked by the grand jury, or, in the event of his failure to do so, punish him for contempt.

3.  Prohibition—Restraint Upon Jurisdiction of Circuit Court.—A writ of prohibition will not be granted by the Court of Appeals to restrain a circuit court from acting within its jurisdiction, however erroneous its actions may be.

STEPHENS L. BLAKELEY for petitioner.

THOMAS B. McGREGOR for respondent.

OPINION BY JUDGE SETTLE—Refusing writ.

The petitioner, Robert A. Gordon, by petition filed in this court, prays of it a writ of prohibition against the respondent, Frank M. Tracy, judge of the circuit court of the 16th judicial district of Kentucky, to prevent him, sitting as a court, from compelling the petitioner to answer a certain question or questions propounded to him by the grand jury of Kenton county as ordered by him; and, also, from enforcing such order, if disobeyed by petitioner, by proceeding, as threatened, to punish him for contempt. The respondent filed a general demurrer and response to the petition, and the cause was thereupon submitted upon the petition, demurrer to same and response.

The facts that must be considered in passing on the question presented for decision in this case are admitted by the pleadings to be as follows: The petitioner, Robert A. Gordon, resides in the city of Covington, where he owns and conducts a drug store in which, in addition to drugs and soft drinks, he keeps for sale newspapers, magazines and other publications, including a daily publication styled the "Daily Racing Form," which is issued from the city of Chicago, Illinois, and for the sale of which he is the sole agent in the city of Covington. His

sales of this publication amount to about one hundred and fifty copies per day, at least forty of which are distributed to regular subscribers in Kenton county and the remainder over the counter of his store to other persons living in or contiguous to Covington.

The "Daily Racing Form" publishes and furnishes its readers the racing news from all race tracks in the United States, Canada, Mexico and Cuba; advertises all dates of races and the entries of horses for races run and to be run; the wagers offered or placed on each; gives the "tips" of horsemen as to the probable winners in horse races to be run; also the pedigrees, past records and performances of horses entered as racers at the tracks where meetings are being held; the names of jockeys by whom they are to be mounted, and much other information, both general and specific, respecting horse racing that would prove useful to persons wishing to place wagers on such sport, even without attending the meetings at which the racing is conducted.

It further appears from the pleadings that the petitioner was duly served with a subpoena to appear as a witness before the grand jury of Kenton county, which, then being in session, had under investigation, among other offenses against the criminal and penal laws of the state, violations of the laws thereof against gambling, especially gambling upon the racing of horses, particularly denounced by chapter 8, Acts General Assembly, 1920. Upon the petitioner's appearing before the grand jury in obedience to the subpoena, and after being duly sworn as a witness by the foreman of the grand jury he was asked by the Commonwealth's attorney, then present in the grand jury room, to state the names of the persons to whom he was accustomed to sell or had sold the "Daily Racing Form," which question he did not answer and told the grand jury he would not answer, unless advised by his attorney to do so. Petitioner was given an opportunity to consult his attorney, after doing which he returned to the room of the grand jury and flatly refused to answer the question previously propounded to him by the Commonwealth attorney in their presence. Thereupon, in conformity to section 108, Criminal Code, petitioner was taken by the grand jury before the respondent, Frank M. Tracy, judge of the Kenton circuit court, criminal division, whose court was then in session and he presiding as the judge thereof. The foreman of the grand jury then stated to the respondent as judge of

the court the question that had been asked petitioner, his refusal to answer same, and the reason given by him for such refusal. Whereupon respondent, as judge of the court, informed the petitioner that he must answer the question propounded, and that his refusal to do so, if persisted in, would result in his being proceeded against by respondent for a contempt of court. Persisting in his refusal to answer the question, petitioner at once filed in this court his petition for the writ of prohibition.

It is insisted for the petitioner that the question asked him before the grand jury was one the court was without authority to compel him to answer, (1) because the act, violations of which the grand jury were seeking of him evidence by the question propounded, is unconstitutional; (2) that to have answered it by furnishing the names of persons who purchased of him the ''Daily Racing Form'' would probably result in the loss to him of their patronage and thereby injure his business; (3) the information demanded thereby would have been incompetent as evidence for any purpose. As to the first of these contentions it is sufficient to say that as the petitioner was in no way affected by the act of 1920, or the investigation being conducted by the grand jury under it, his objection to its constitutionality, if it had been made before the respondent, could not have been considered by the latter, nor can it now be considered by us; for it has repeatedly been held by this court that one who is unaffected by the provisions of a statute will not be heard to complain that it is unconstitutional. Marshall v. Donovan, 73 Ky. 689; Commonwealth v. Wright, 79 Ky. 22; Cooley's Constitutional Lim., section 164.

It is not made to appear from anything stated in the petition that the grand jury was or is attempting to indict the petitioner for any violation of the act of 1920, nor does it appear from the record that he has violated any provision of the act. But if by any possibility an indictment against him could result from his furnishing the grand jury the testimony demanded of him, he could not be prosecuted under it, because the act expressly provides: .

''In any prosecution under this act, or in any investigation by an examining court or grand jury, it shall be no exemption for a witness that his testimony may criminate himself, but no such testimony given by the witness shall be used against him in any prosecution except for false swearing or perjury, and he shall be discharged

from liability for any violation of the law on his part disclosed by his testimony, nor shall any person against whom he testifies be permitted to prove similar violations upon the part of such witness.''

It is clear from these provisions of the act, *supra,* that they render the petitioner immune to any prosecution by reason of his violation of any of them that might be disclosed by his testimony.

We regard the petitioner's second contention also unsound. One cannot be excused from giving testimony respecting violations of the criminal or penal laws of the state upon the ground that to do so would injure him in his business or in the estimation of his friends; for these are minor considerations that must yield to the public good, and a constitutional provision that ''no person shall be compelled to furnish evidence against himself,'' does not relate to questions of property, or business, or to the protection of other persons by the witness. As well said in 28 R. C. L., section 12.:

''Constitutional provisions protecting witnesses from being compelled to give self-incriminating evidence afford a shield which is personal to the witness, designed for their own protection, and not for the protection of others. Accordingly, an officer of a corporation cannot refuse to produce books of the corporation because of the fact that they contain evidence incriminating other officers, where they do not in any way tend to incriminate him. . . . The law does not permit a witness arbitrarily to hide behind a fancied or intangible danger to himself.''

It is patent, therefore, that the petitioner was not legally entitled to rely upon the probability of injury to his business, or that of angering his customers, as reasons for his refusal to furnish the testimony demanded of him by the grand jury.

The petitioner's third and final contention is, we think, as untenable as those we have considered. First of all it is not made apparent that the evidence demanded of him by the grand jury was, or would have been, incompetent. On the contrary, we can see that his furnishing the names of purchasers of the ''Daily Racing Form'' might have led to the grand jury's obtaining from the testimony of some of them, or others named by them, information regarding gaming on horse racing upon which indictments might be found. At any rate we are unable to see how the respondent under the circumstances could have

held the question or answer incompetent. Necessarily, a wide range must be given to the investigations of the grand jury, for the means to which they must resort to discover crime are bound to be in main inquisitorial. Many of the witnesses brought before them are unwilling witnesses who seem to see no wrong in concealing what they are not practically forced to disclose. The evidence upon which indictments are found is obtained largely by piecemeal from divers sources and witnesses. A fact or circumstance obtained in the investigation of a given offense or crime from a single witness, which of itself seems irrelevant, or even incompetent, may serve as a clew to other evidence of controlling effect, or constitute a link necessary to complete a chain of evidence sufficient to authorize an indictment that otherwise would remain incomplete. For these reasons, if no other could be found, it was obviously never contemplated by the makers of the Criminal Code, that the investigations of the grand jury should be halted by the refusal of a recalcitrant witness to answer a question propounded to him by the grand jury, because in the opinion of himself, or attorney, it was immaterial as evidence or that to answer it might injure him in his business or with his friends and thereby compel the foreman to take him before the court and have the question passed on by the court.

While section 107, Criminal Code, provides that "the grand jury can receive none but legal evidence . . . ," in Commonwealth v. Minor, 89 Ky. 555, we said, in construing this section:

"It seems to us that the provisions of that section are merely directory, and that it was intended thereby no more to give the court the power to revise the action of the grand jury in respect to the character of evidence received by them than to authorize it to require or compel them to hear additional evidence that might, in the opinion of the court, explain away the charge."

We are further of opinion, however, that neither the competency of the evidence in question nor the ruling of the respondent in holding it competent, is properly before us for review. It is admitted that the latter passed on and decided the question, and as he undoubtedly possessed the jurisdiction to do so the writ of prohibition can not issue to prevent him from doing what he has already done. Aside from such general jurisdiction as is vested in him by law as judge of the court over which he presides, he is given by the Criminal Code, section 108, ex-

clusive jurisdiction to determine the particular question here attempted to be raised, which jurisdiction has been exercised. Nor would it be material if the action taken by respondent were clearly erroneous. No question is better settled in this jurisdiction than that the writ of prohibition will not lie to restrain an inferior court from acting within its jurisdiction, however erroneous its action may be; and this is true although the party seeking the writ is without right of appeal. And for a greater reason will the writ not issue where the jurisdiction of the inferior court has been exercised. The authorities supporting this rule are so numerous and familiar that it is deemed sufficient to merely cite them below. Carey v. Sampson, 150 Ky. 460; Rush v. Denhardt, 138 Ky. 245; Schobarg v. Manson, 110 Ky. 493; Goldsmith v. Owen, 95 Ky. 420; Commonwealth, etc. v. Weissinger, Judge, 143 Ky. 369.

For the reasons indicated the demurrer to the petition is sustained and the writ of prohibition denied.

Whole court sitting.