## Frain v. Applegate, Judge.

(Decided June 16, 1931.)

STEPHENS L. BLAKELY for plaintiff.

J. W. CAMMACK, Attorney General, and LESLIE T. APPLEGATE for respondent.

OPINION OF THE COURT BY CHIEF JUSTICE THOMAS—
Overruling motion for restraining order.

The respondent, Leslie T. Applegate, is one of the circuit judges of the Sixteenth judicial district in this commonwealth. On the afternoon of March 18, 1931, Alfred Cunningham was shot and killed on East Eighth street, in Covington, Ky., near the front of the residence of William Bannon. The grand jury of the criminal branch of the circuit court in that county, and over which respondent presides, was then in session, and it commenced the investigation of the commission of that crime, with the view of indicting the perpetrator. It subpoenaed as a witness before it the plaintiff herein, John Frain, who after being sworn was asked by the commonwealth's attorney these two questions:

(1) "Did you see a man shoot Alfred Cunningham in front of or near the residence of William Bannon on East Eighth Street in Covington, Kentucky, on the afternoon of March 18, 1931?" (2) "If you answer in the affirmative, state to the Grand Jury who it was that shot Alfred Cunningham at that time and place?"

Plaintiff declined to answer either of them, because as insisted by him he might thereby incriminate himself, and he was properly taken before the respondent as the presiding judge of the court, pursuant to the provisions of section 108 of the Criminal Code of Practice, for the purpose of determining whether he should be required to answer the questions. They were repeated to him in the presence of respondent, and plaintiff again declined to answer either of them; his refusal being based upon the same ground. Respondent thereupon concluded that neither of the questions propounded to plaintiff was so framed as to elicit any incriminating facts against him, nor would any answer to either of them, if made in strict response to the language in which they were framed,

uncover any such incriminating information, and he required plaintiff to answer the questions upon penalty of his being confined in jail if he persisted in declining, and to remain there until he did answer. Following that, and under a stipulation for matters to remain in statu quo until it could be done, plaintiff filed this original action in this court against respondent, accompanied with a motion for appropriate restraining process from punishing plaintiff for the alleged contempt in refusing to answer the questions, or either of them, upon the ground that respondent erroneously adjudged that the answers to the questions propounded were not such as to deprive plaintiff of his guaranteed exemption in section 11 of our Constitution, saying, "He [defendant] can not be compelled to give evidence against himself," and because of which respondent was proceeding or about to proceed erroneously within his jurisdiction, followed by the requisite consequences that would give this court jurisdiction upon original application to it to grant the prohibitive relief sought. The response to the petition sets out the facts and then denied that respondent was proceeding erroneously in requiring plaintiff to answer the questions propounded to him by the grand jury and prayed that the petition be dismissed, and the motion overruled.

In the very recent case of Osborn v. Wolfford, Judge, 239 Ky. 470, 39 S. W. (2d) 672 (decided June 5, 1931), we reviewed and approved the limitations of our original jurisdiction under section 110 of our Constitution as declared by prior cases, some of which are expressly referred to in that opinion, and the others will be found by consulting those so referred to. Those limitations are: That this court will entertain jurisdiction, on original application to it under the section of the Constitution referred to, only when the inferior tribunal proceeded against is acting, (1) without jurisdiction, or (2) when it is acting within its jurisdiction, but is erroneously doing so, and (a) great and irreparable injury would follow therefrom, and (b) without any adequate remedy open to the applicant by which he might obtain relief therefrom. In some of our cases we have defined what would be the necessary "great and irreparable" injury within requisite (a) supra, and what would or not be "an adequate remedy" within requisite (b) supra. But under the conclusions we have reached in this case it will not be necessary to refer to those definitions or to invoke those limitations.

All courts hold, including this one, that where the inferior court is proceeding within its jurisdiction and not erroneously, no prohibitive or restraining relief will be granted by a suprior court, regardless of the character or extent of the consequent injury flowing therefrom, and regardless of the inadequacy of any remedy for relief against such injuries, or whether any remedy at all is available. Therefore, if we have jurisdiction at all in this case it must arise from the fact that respondent, though acting within his jurisdiction, was doing so or about to do so, erroneously followed by the consequences in requisites (a) and (b), supra, so as to authorize this court to restrain him under its original jurisdiction conferred by the above-cited section of the Constitution.

It is not contended that respondent was not acting within the jurisdiction conferred upon him by section 108 of the Criminal Code of Practice, supra, and that being true, the first question for our determination is: Did he erroneously exercise that jurisdiction when he concluded and adjudged that plaintiff should answer the question propounded to him before the grand jury under penalty of punishment for contempt for failing to do so? That the constitutional protection against self-incrimination extends to investigations before grand juries is well settled. See 28 R. C. L. 425, 426, sec. 10, and Gordon v. Tracy, Judge, 194 Ky. 166, 238 S. W. 395. It is also well settled by the great weight of authority that in claiming the protection of such constitutional provisions the witness is not the sole judge of whether or not the question that he refuses to answer (and which is determinable from its phraseology) would elicit an answer having a tendency to incriminate him. On the contrary, such determination is one to be made by the court from an inspection of the question itself. R. C. L. supra, 428, sec. 14. In accentuating that rule the compiler of that usually reliable text says:

"Otherwise it would be in the power of every witness to deprive parties of the benefit of his testimony, by a merely colorable pretense that his answers to questions would have a tendency to implicate him in some crime or misdemeanor, or would expose him to a penalty or forfeiture, when it is clear that the questions have no such tendency. The court must be able to discern from the character of the question and the other facts adduced in the case

some tangible and substantial probability that the answer of the witness might help to convict him of a crime.''

In the annotations beginning on page 139 of 27 A. L. R. and on page 140, the annotator in dealing with this phase of the question says: ''The witness, however, is not permitted to refuse to answer a question before the grand jury on his mere arbitrary assertion of this privilege. If it is clear that a direct answer will not incriminate the witness, he is not the one to decide whether the answer will be self-incriminating, and the court may require that he answer or be adjudged guilty of contempt. Richman v. State (1850), 2 G. Greene (Iowa) 532; Ward v. State (1829), 2 Mo. 120, 22 Am. Dec. 449 Re Taylor (1894), 8 Misc. Rep. 159, 28 N. Y. S. 500; Com. v. Bolger (1911), 229 Pa. 597, 79 A. 113; Floyd v. State (1851), 7 Tex. 215.'' See also the case, to which annotations are annexed, of Siklek v. Commonwealth, 133 Va. 789, 112 S. E. 605, and reported in the same volume of A. L. R. at page 135. The Bolger case, cited in the excerpt supra, is very illuminating upon the direct question now under consideration, and there is cited therein cases from other courts to the same effect, as well as Wigmore on Evidence, sec. 2268.

The questions propounded to plaintiff in this case were directed exclusively to discovering what he might know concerning actions of others than himself. They were solely directed toward eliciting conduct and doings of a third party, or parties, and did not even involve any connection of plaintiff with such acts. There is no language in either question requiring him to divulge any reason why he saw the perpetration of the homicide about which he was inquired, if he did see it, and they are equally barren of any language tending to elicit from him any connection that he had, or may have had, with the perpetration of that crime; not even the fact of why he was acquainted with the perpetrator, if he was so acquainted. A full and complete answer to those questions if made in the affirmative would have been, ''Yes,'' to the first one, and for plaintiff to have stated who the perpetrator was, if known by him in answer to the second one, or if not so known to have said so. Whether or not the inquiry could have been further pursued, and if so to what extent, are questions not now presented, and the bare possibility of such pursuit being made to an unallowable extent cannot justify plaintiff in refusing to

answer the questions actually propounded to him, and which respondent correctly ruled that he should answer.

Having concluded that respondent was proceeding within his jurisdiction and not erroneously, it becomes unnecessary to discuss or determine the other requisites embodied in designations (a) and (b), supra. We, however, deem it proper to observe if the determination of the witness should be given final effect, then courts would be powerless to enforce the laws of the country either civil or criminal, and the days of their successful functioning would be numbered. No such impotency should be created by adopting any such construction of the constitutional guaranty and privilege, and the courts of this country, including this one (194 Kentucky case, supra), have held to the contrary.

It follows that the motion of plaintiff to obtain the restraining order prayed for in his petition should be and it is overruled, and his petition is dismissed.