## Taylor v. Commonwealth.

(Decided June 7, 1938.)

52

BAKER & BAKER for appellant.

HUBERT MEREDITH, Attorney General, and W. OWEN KEL-LER, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

The case presents a question of constitutional immunity from compulsory self-crimination.

The appellant, Eugene Taylor, and another, James Webber, were jointly indicted on the charge of grand larceny, committed by stealing wool. Upon a separate trial Taylor was convicted and sentenced to two years' imprisonment.

The court overruled the defendant's motion to quash the indictment and his plea in abatement. On the hearing it was established that the accused was in jail upon this charge; the foreman of the grand jury sent for him; a deputy jailer told him he had to go before the grand jury and took him there; he was sworn, and, being warned as to the penalty for "swearing a lie," was interrogated by several members of the grand jury concerning the crime with which he stood charged. The accused was not told that he did not have to testify or advised that whatever he said might be used against him. He related that he had not wanted to testify, but was excited and thought he had to go ahead and tell about it. He told the grand jury that he had been with Webber in his truck the night the wool was stolen; that he had been drinking and had fallen asleep; that he had nothing to do with taking the wool, but had been later told by Webber that while he was in this drunken stupor, he, Webber, had got the bag of wool and concealed it. He gave details of his association with Webber that night and of the transaction as he knew it. The foreman and clerk of the grand jury testified without objection from either party. While they say the accused gave no evidence against himself, yet he had been asked "a lot of questions." The grand jury, the foreman testified, concluded that Webber could not have handled the wool by himself as he had described, and the indictment against Taylor was based upon the fact that he was with him. There was evidence before that body other than the appellant's that he had been with Webber that night.

It should be said that during these proceedings neither the Commonwealth's Attorney nor the County Attorney was present.

It is one of the "great and essential principles of

liberty and free government'' that a citizen shall not be compelled to give evidence against himself in any criminal prosecution. It is enough that this is a constitutional guaranty contained in the Bill of Rights of the Constitution of Kentucky, Sec. 11, and (though not operative on a witness in a state court) in the Bill of Rights of the Constitution of the United States, Fifth Amendment, U. S. C. A. Constitution Amendment 5. The right is accented by being a heritage from our English fathers, for it is among the fundamentals of just procedure, born of the travail of the centuries. 4 Wigmore on Evidence, Sec. 2250, et seq.; Marshall v. Riley, 7 Ga. 367; State v. Height, 117 Iowa 650, 91 N. W. 935, 59 L. R. A. 437, 94 Am. St. Rep. 323. Proceedings before a grand jury are within the meaning of constitutional exemption for it is a very important part of a prosecution. Wharton's Cr. Ev. (11th Ed.) Sec. 1140; Bentler v. Com., 143 Ky. 503, 136 S. W. 896; Frain v. Applegate, 239 Ky. 605, 40 S. W. (2d) 274.

It is not unusual to find statutes providing that a witness, though a participant in a criminal offense, may not refuse to answer any question upon the ground of self-crimination, but most of them establish this principle of full and complete immunity against prosecution based upon such disclosure. Among others in Kentucky, we have such statutes in relation to gambling, Sec. 1973; statutory conspiracy, Sec. 1241a-7; and intoxicating liquor prohibitions, Sec. 2554c-36. These statutes are construed as giving immunity as broad as the constitutional provision against requiring one to incriminate himself. Some of them expressly grant absolute immunity from any sort of prosecution for the offense. Bentler v. Com., supra; Com. v. Barnett, 196 Ky. 731, 245 S. W. 874. But the right being preserved by the constitution, the privilege of exemption continues though there be no statute. Counselman v. Hitchcock, 142 U. S. 547, 12 S. Ct. 195, 35 L. Ed. 1110.

When the court is called upon in a given case to protect this right, there are two controlling conditions to be looked for. First, the factor of compulsion; secondly, the element of self-crimination.

First. One voluntarily testifying before an inquisitorial body is not entitled to immunity and an indictment returned against him is not invalidated by reason thereof. Gentry v. Com., 215 Ky. 728, 286 S. W.

1040; Turner v. Com., 227 Ky. 520, 13 S. W. (2d) 533; Hill v. Com., 232 Ky. 453, 23 S. W. (2d) 930; Bromfield v. Board of Commissioners, 233 Ky. 250, 25 S. W. (2d) 393; Frost v. Com., 258 Ky. 709, 81 S. W. (2d) 583; note, 27 A. L. R. 147. But appearing and testifying before a grand jury in obedience to a subpœna is sufficient compulsion to entitle an accused person to immunity. Counselman v. Hitchcock, supra; Bentler v. Com., supra; Dunn v. Com., 200 Ky. 262 ,254 S. W. 896; Hall v. Com., 202 Ky. 811, 261 S. W. 597; Hubbard v. Com., 207 Ky. 785, 270 S. W. 30; note, 27 A. L. R. 148. Certainly, a jailer taking a prisoner before the grand jury is as compelling as serving a summons upon him. In the appellant's situation, such process would have been a futility.

Having been brought before such tribunal by this involuntary method, the question arises whether the giving of testimony by the accused was under like force. "Compulsion is the antithesis of willingness. The provision means that no person shall be forced to be a witness against himself against his free will." U. S. v. Kimball, C. C., 117 F. 156, 163. The New York court, in People v. Bermel, 71 Misc. 356, 128 N. Y. S. 524, 527, 26 N. Y. Cr. R. 47, drew a distinction between a witness in a general investigation not aimed at him and a witness who is in fact the party being proceeded against. If of the latter class, it was held that his constitutional right is violated if he be subpœnæd before the grand jury, sworn and questioned, though he makes no claim of privilege or exemption.

In People v. Smith, 257 Mich. 319, 241 N. W. 186, the law applicable to the two classes is thus well stated (page 188):

> "To summarize the pronouncements of the courts and text-writers on the question of self-incriminating evidence, it appears to be well settled that, if a witness wishes the benefit of the privilege, he must claim it; that the privilege is personal and may be waived; that it is deemed to have been waived when he fails to assert it; and that failure to warn him of his constitutional right is not a violation of the privilege.

> "These are general rules not applicable to all conditions and circumstances. They should not be applied where the witness is in custody accused of

crime at the time the testimony is taken. Also, it would seem that they ought not to be applied where the witness is brought before the jury for the sole purpose of securing evidence on which to indict him or where he is too ignorant to protect himself.''

Whether under all circumstances the mere failure to advise the party of his constitutional rights and notify him of the possible adverse consequences of his testifying, or the failure on his part to claim immunity is to be deemed compulsion, it is not necessary here to say. It is sufficient to say that the circumstances of this case—the taking of the youth from jail to the grand jury, their covert threats, their plying him with questions, and his own uncontradicted statement that he testified unwillingly—justify the conclusion that he was compelled to give his evidence within the meaning of the Bill of Rights. U. S. v. Kimball, supra; State v. Gardner, 88 Minn. 130, 92 N. W. 529; Boone v. People, 148 Ill. 440, 36 N. E. 99; State v. Frizell, 111 N. C. 722, 16 S. E. 409; State v. Corteau, 198 Minn. 433, 270 N. W. 144.

Secondly. Since the accused's evidence before the grand jury was as a whole that he was innocent, can it be said that he incriminated himself so as to be entitled to have the indictment set aside? The fact that he was with Webber at the time was certainly incriminating. It was a link, and a strong link, in the chain of circumstances. Upon it the indictment was returned. His exculpatory evidence was discarded. The constitutional declaration is that the accused ''cannot be compelled to give evidence against himself.'' Evidence in whole or in part adverse to his own interest is thus positively precluded. We so recognized that interpretation in Bentler v. Com., supra. If it were otherwise a single disclosure might supply an essential connection or furnish the only means of discovering evidence concerning the transaction sufficient to convict the witness, or even the corpus delicti itself. Wharton's Cr. Ev. (11th ed) Sec. 1137; Emery's Case, 107 Mass. 172, 182, 9 Am. Rep. 22; State v. Gardner, supra; State v. Sly, 63 S. D. 162, 257 N. W. 113; People v. Spain, 307 Ill. 283, 138 N. E. 614; People v. Newmark, 312 Ill. 625, 144 N. E. 338; Duckworth v. District Court of Woodbury County, 220 Iowa 1350, 264 N. W. 715; State v. Corteau, supra.

But we do not go so far as to say that the mere possibility of furnishing a clue is to be deemed incriminatory. Wigmore Sec. 2261. Cf. French v. Com., 198 Ky. 512, 249 S. W. 761.

It may be argued that as the grand jury heard evidence other than that of the accused that he was with Webber when he committed the crime, he suffered no injury by so testifying. The fact remains, however, that he was "compelled to give evidence against himself." Such argument was answered in U. S. v. Edgerton, D. C., 80 F. 374, as follows (page 376):

"Where a witness is compelled to testify against himself, the injury inheres in the violence done to his rights. It is not susceptible of proof, nor the policy of the law to require it, and the injury done to the public in such case outweighs that suffered by the defendant. It is a matter of the highest public policy that crime shall be punished by legal methods."

In People v. Bermel, supra, it was contended that testimony given by a defendant did not invalidate the indictment since there was other evidence to support it. In answering this contention, the court said (128 N. Y. S. page 528):

"It does not do to call a defendant before the grand jury and cross-examine him, then later call other witnesses, and base an indictment solely upon the testimony of the other witnesses, claiming that the illegal examination of the defendant can be disregarded and ignored or wiped out of the record. Such a procedure would open a very wide door for abuse and oppression. It may very well be that Charles Bermel committed perjury, and that no particular harm was done him individually by his examination before the grand jury, as he can be readily indicted again upon proper testimony, and should be, but, in the interests of orderly procedure and of those methods which heretofore have seemed wise and safe for the administration of the criminal law, I must set this indictment aside."

The same conclusion that though there was other evidence of the same fact it does not destroy the accused person's exemption was reached in State v. Garner, supra, State v. Sly, supra, and State v. Naughton, 221 Mo. 398, 120 S. W. 53.

58

It appears, therefore, that the rights of the appellant were invaded. The grand jury has always been considered as a means of protection and not of oppression. In their proceedings the grand jurors cannot deprive a citizen of any substantial right assured by the constitution. They cannot, therefore, call a person before them and compel him to testify against himself for the purpose of finding an indictment against him. This is what was done in this case. Though guilt deserves no immunity and punishment demands speed, yet it were better that in an individual application a guilty man should escape or the administration of justice be delayed than that this fundamental personal right should be violated. Its preservation ultimately works for good—for the good of an accused person who may be innocent and of the people at large. It is of vital importance that this essential liberty should be protected from every sort of infringement; that it be not whittled away or be weakened by attrition through too strict construction. The power that punishes is the power that protects.

We are of opinion, therefore, that the indictment against the appellant should have been quashed. This is in accord with the weight of authority as disclosed in several of the cases above cited. Such action will not prevent another indictment being returned against the appellant upon this charge provided it is not based upon any information which he was called upon to give the former grand jury. The evidence he gave there cannot be used against him for any purpose.

Judgment reversed.

Whole court sitting, except Clay, J.