COMMONWEALTH of Kentucky, Appellant,

v.

Henry RHINE, Appellee.

Court of Appeals of Kentucky.

June 14, 1957.

**302**

Jo M. Ferguson, Atty. Gen., Robert F. Matthews, Jr., Asst. Atty. Gen., A. Scott Hamilton, Louisville, for appellant.

Robert W. Zollinger, Louisville, for appellee.

Carl L. Wedekind, Jr., Louisville, for Kentucky Civil Liberties Union, Inc., amicus curiæ.

CAMMACK, Judge.

On October 23, 1956, during the course of a hearing before the Jefferson County grand jury, Henry Rhine was summoned and questioned concerning his association with Carl Braden. (In 1954 Braden had been convicted of the crime of sedition in the Criminal Branch of the Jefferson Circuit Court. His conviction was reversed by this Court on the ground that the Congress had intended to occupy exclusively the field of sedition against the United States, and had left no room for the states to supplement the existing Federal laws. Braden v. Commonwealth, Ky., 291 S.W.2d 843.) The first twenty-seven questions asked by the Commonwealth's Attorney, A. Scott Hamilton, were innocuous. They related to Rhine's past residences, education and work history, and were answered readily by him. In Question 28, he was asked how long he had known Braden. Rhine refused to answer on the ground that it might incriminate him. In ensuing questions, he was asked whether he was or had ever been a member of the Communist Party, whether he had ever attended cell meetings in Jefferson County, and whether he had been acquainted with known or suspected associates of Braden. Rhine asserted his privilege on the ground of self-incrimination and refused to answer any of the questions propounded by the Commonwealth's Attorney. Questions 56 and 57, together with Rhine's answers, were as follows:

"56 Q. Mr. Rhine, regardless of whether or not you are a Communist—I am not interested in that—but do you know whether or not Carl Braden is a Communist? A. Same answer. I refuse to answer on the ground that anything I may say may tend to incriminate me. * * *

"57 Q. Did you ever attend a Communist Party meeting in Carl Braden's house—without asking or wanting to know what effect such attendance might have had on you, if any effect, but in view of that, did you ever attend any meeting in Carl Braden's house relative to Communism or where a cell meeting was being held? A. I refuse to answer, and that is my answer. * * *"

Questions 56 and 57 were certified to the trial judge for a ruling. He ruled that Rhine was privileged not to answer. The Commonwealth is appealing for the purpose of a certification of the law under Section 337 of the Criminal Code of Practice.

The Commonwealth urges first that answers to the certified questions could not

result in incriminating Rhine, because the Commonwealth's Attorney told Rhine in Question 56 that he was not concerned with Rhine's connection with the Communist Party. It is argued further that the privilege was not available for the protection of third persons, and that Rhine attempted so to use the privilege in his answers to the questions certified.

 The first argument requires little comment. Rhine was advised carefully concerning his privilege to refuse to make self-incriminating answers at the beginning of the questioning. Most of the questions were directed towards eliciting information concerning Rhine himself. Even if it be concluded that the Commonwealth's Attorney's phrasing in Questions 56 and 57 amounted to an offer of immunity to the witness, we have not been referred to any statute, nor have we found any, empowering him to grant immunity in this kind of hearing. Rhine was not called to testify for the Commonwealth in a sedition prosecution, and thus was not placed within the limits of our immunity statute. See KRS 432.020 to 432.070. Furthermore, it was necessarily beyond the power of the Commonwealth's Attorney to provide immunity from prosecution by the United States Government, even if it should be considered that he could so insulate the witness from prosecution by the Commonwealth.

Even though the questions certified seemingly were not directed toward discovering facts about the witness himself, answers to them could have provided an essential link of evidence in a prosecution against Rhine. As stated by Chief Justice Marshall,

"It is the province of the court to judge whether any direct answer to the question which may be proposed will furnish evidence against the witness. If such answer may disclose a fact which forms a necessary and essential link in the chain of testimony, which would be sufficient to convict him of any crime, he is not bound to answer it so as to furnish matter for that con-

viction." United States v. Burr (In re Willie), 25 Fed.Cas., pages 38, 40, No. 14,692e.

There is no doubt that the information desired by the Commonwealth's Attorney could have provided some evidence for a Federal prosecution under the Smith Act or other related Federal statutes. As to the determination of the evidentiary value of the information by the trial judge, we are inclined to follow the reasoning of the United States Court of Appeals, Third Circuit:

"* * * in determining whether the witness really apprehends danger in answering a question, the judge cannot permit himself to be skeptical; rather must he be acutely aware that in the deviousness of crime and its detection incrimination may be approached and achieved by obscure and unlikely lines of inquiry." U. S. v. Coffey, 3 Cir., 1952, 198 F.2d 438, 440.

We find no error in the trial judge's conclusion that the answers sought might have provided incriminating evidence.

 It remains to be answered whether Section 11 of the Constitution of Kentucky provides a privilege to a witness to refuse to answer where the answer might tend to incriminate him of an offense against the United States. There is no doubt that, in obverse circumstances, the rule does not apply. In Federal proceedings, the use of the privilege is now restricted to matters that would tend to incriminate the witness of a Federal offense only, and does not apply to matters of state law. United States v. Murdock, 284 U.S. 141, 52 S.Ct. 63, 76 L. Ed. 210. In the past, use of the Fifth Amendment was not so restricted. See Ballmann v. Fagin, 200 U.S. 186, 26 S.Ct. 212, 50 L.Ed. 433; Jack v. State of Kansas, 199 U.S. 372, 26 S.Ct. 73, 50 L.Ed. 234. Even today, its curtailment has not passed uncriticized. See Marcello v. United States, 5 Cir., 1952, 196 F.2d 437; United States v. DiCarlo, 102 F.Supp. 597.

**304**

 Section 11 of the Constitution of Kentucky reads in part as follows:

"In all criminal prosecutions the accused has the right to be heard by himself and counsel * * *. He cannot be compelled to give evidence against himself, nor can he be deprived of his life, liberty or property, unless by the judgment of his peers or the law of the land. * * *"

Our constitutional protection against self-incrimination applies to investigations before grand juries as well as to criminal trials. Frain v. Applegate, 239 Ky. 605, 40 S.W.2d 274; Taylor v. Commonwealth, 274 Ky. 51, 118 S.W.2d 140. For a discussion of the rights of a witness before a Federal grand jury, see Grunewald v. United States, 77 S.Ct. 963. We believe that to render effective the quoted Constitutional provision against self-incrimination, it is essential that it apply to prosecutions by the United States as well as to those by the Commonwealth. To hold otherwise would be to ignore the fact that our citizens are in a very real sense, as well as in a technical one, citizens of both the State of Kentucky and of the United States. The jurisdiction of both governments is coextensive. As stated in People v. Den Uyl, 318 Mich. 645, 29 N.W.2d 284, 287, 2 A.L.R.2d 625,

"It seems like a travesty on verity to say that one is not subjected to self-incrimination when compelled to give testimony in a State judicial proceeding which testimony may forthwith be used against him in a Federal criminal prosecution."

 This jurisdiction has been consistent and rigorous in protecting the rights of witnesses and in forestalling possible abuses in judicial administration. See Commonwealth v. O'Harrah, Ky., 262 S.W.2d 385; Swanger v. Commonwealth, Ky., 255 S.W. 2d 38. After a review of the authorities and a careful consideration of the principles involved, we are of the opinion that a witness is privileged under Section 11 of the Constitution of Kentucky to refuse to an-

swer a question whenever there is a probability of prosecution in either State or Federal jurisdictions. See State v. Dominguez, 228 La. 284, 82 So.2d 12; People v. Den Uyl, 318 Mich. 645, 29 N.W.2d 284, 2 A.L.R. 2d 625; In re Watson, 293 Mich. 263, 291 N.W. 652; State ex rel. Mitchell v. Kelly, Fla., 71 So.2d 887.

The law is so certified.