**Alma YOUNG, an Infant 17 Years of Age, etc., Appellant,**

**v.**

**Honorable Thomas J. KNIGHT, Appellee.**

Court of Appeals of Kentucky.

Sept. 25, 1959.

Rehearing Denied Dec. 18, 1959.

Henry A. Triplett, Louisville, for appellant.

Carl C. Ousley, Jr., Asst. Commonwealth's Atty., Louisville, for appellee.

STANLEY, Commissioner.

This is an action seeking an order prohibiting Honorable Thomas J. Knight, a Judge of the Criminal Branch of the Jef-

ferson Circuit Court, from enforcing a rule of contempt against the petitioner, Alma Young, for refusing to answer questions asked her in a grand jury investigation. Judge Knight has suspended his order adjudging the petitioner in contempt and ordering her committed to jail (KRS 421.140, 432.230) until the present action is decided.

The power of this court is invoked under § 110 of the Constitution on the two causes for which we have ruled the power will be exercised, viz., the trial court is proceeding (1) without jurisdiction, and (2) erroneously within its jurisdiction but with resulting great injustice or irreparable injury for which there is no adequate remedy by appeal.

The sequence which led to the proceeding is that the petitioner's father, Seavy Young, stands charged with the murder of John Charles Kirchner. Young had waived examining trial. The grand jury was in course of determining whether an indictment against him or anyone else should be returned. The petitioner is seventeen years old.

A transcript of evidence heard by the grand jury was filed with the circuit judge. A detective had testified at length as to his detections and as to particular circumstances of the homicide. In brief, his testimony was that the deceased, nineteen years old, had been the escort of Alma Young on the evening of May 17, 1959, and they had come home about half past one o'clock in the morning. Her father was waiting for them and after upbraiding the young couple, got in the rear seat of the boy's automobile and shot him while he and his daughter were on the front seat. The detective learned this and other circumstances from the daughter's statements to officers and newspaper reporters.

The petitioner went before the grand jury in obedience to a subpoena. She testified to some particulars which the detective had described. But she declined, upon advice of counsel, to answer several questions on the ground that her answers "may

tend to incriminate me." The witness was taken before Judge Knight, and a hearing was had on the witness' refusal to answer these two questions: (1) "Were you in the car that night with your father and this young man who was killed at the time he was killed?" (2) "If your answer to the question now before the Court is in the affirmative, state to the grand jury who it was that shot John Kirchner."

Judge Knight ruled that the witness was not privileged from answering the questions as he did not believe the answers would incriminate her. The court directed the witness be returned to the grand jury room and advised her that she should answer the questions, warning her that if she still refused, he would hold her to be in contempt of court. Thereupon, it was stipulated by the attorneys representing the witness and her father that she would persist in her refusal. The court then adjudged the witness to be in contempt.

## I.

The petitioner's claim that the circuit court has no jurisdiction to punish her for contempt rests upon the statutes governing county courts sitting in juvenile session and the commitment and care of children under eighteen years of age. Ch. 208, Ky.Rev. Stats. The statutes provide that such juvenile courts (as commonly called) shall have exclusive jurisdiction where such a child "has committed a public offense." KRS 208.020(1). Subsection (2) is exclusionary. It expressly provides that nothing in the chapter shall deprive other courts of jurisdiction in certain enumerated proceedings, such as guardianship, custody, parental rights and adoption. The petitioner argues that since a proceeding for contempt is for a "public offense" and is not within the exclusions, it follows that the circuit court does not have authority to punish a seventeen-year-old child for contempt.

This seems to be a case of first impression on the point.

Our Criminal Code of Practice, § 4, defines a "public offense" as "any act or omission for which the law has prescribed a punishment." KRS 431.060 specifically defines all offenses other than felonies "whether at common law or made so by statute" as misdemeanors. See Stratton v. Commonwealth, Ky., 263 S.W.2d 99. Refusal of a witness to answer may be punished as a contempt of court, with prescribed penalties. KRS 421.110, 421.140, 432.230, 432.260.

This court has expressly held in two cases that contempts of court are misdemeanors. Gordon v. Commonwealth, 141 Ky. 461, 133 S.W. 206, and Melton v. Commonwealth, 160 Ky. 642, 170 S.W. 37, L.R.A.1915B, 689. In the one, Gordon was ruled for giving false testimony. The rule was issued more than one year after the alleged contempt. The proceeding was held to have been barred by limitations applicable to misdemeanors. In the other, Melton, a doctor, was ruled to show cause why he should not be held in contempt for having connived with lawyers to fake a claim and a case for personal injury damages. The accused was found guilty by a jury and his punishment fixed at a $500 fine. We recognized that the act of the accused was a contempt. However, the court regarded the act as being in reality the misdemeanor of obstructing justice.

■ We have many times held that a circuit court does not have original or initial jurisdiction to try a juvenile offender. Jurisdiction is acquired only when it has been relinquished and transferred by the juvenile court. Robinson v. Kieren, 309 Ky. 171, 216 S.W.2d 925.

Thus, on its face, the proposition that a juvenile guilty of contempt of court has "committed a public offense" is not lacking of plausibility. But the argument misses the crucial significance of the kind of contempt here involved and of the aim and purpose of juvenile court statutes.

■ We think there are two grounds for holding this case to be within the circuit court's jurisdiction. One is the nature of the proceeding and the other is the intent and purpose of the statutes dealing with juvenile delinquents and offenders.

■ (1) The term "public offense" (used in the juvenile court statutes) is ordinarily regarded as synonymous with "criminal offense." In Roberts v. Hackney, 109 Ky. 265, 58 S.W. 810, 811, we stated that contempt by a witness in refusing to answer a proper question "is in the nature of a criminal offense, and is so punished under our statutes, being placed in the chapter regulating crimes and punishments." While contempt partakes of the nature of a crime, it is only *quasi* criminal. It has been said that contempt is *sui generis* as being an offense against public justice. 17 C.J.S. Contempt § 7. A distinction may be drawn. Some misconduct may be contempt for which the contemnor may be subject to indictment, e. g., obstructing justice, as in the Gordon and Melton cases, supra. Contemptuous misconduct of a different character may not be so treated. Of such is an act which disregards or interferes with a judicial proceeding, as by disobeying the court's order, or conduct which scorns and defies the authority and dignity of a court or which tends to bring the administration of the law into disrespect. Whitman v. Kentucky Central Life & Acc. Ins. Co., 232 Ky. 173, 22 S.W.2d 593.

■ It is not possible for any judicial tribunal to fulfill its functions without power to preserve decorum and to enforce its orders. Hence, it has been recognized from ancient days that the process of contempt is an essential and inherent attribute of the jurisdiction of every court of record, and this judicial power may not be confined by limitations of a statute, except in respect of punishment. Crook v. Schumann, 292 Ky. 750, 167 S.W.2d 836; Armstrong v. Bryan, Ky., 273 S.W.2d 835; Rapalje on Contempts, § 1, 11. The power of a court to punish for contempt extends to all persons who interfere with the proper exercise of its judicial functions. Burtch

v. Zeuch, 200 Iowa 49, 202 N.W. 542, 39 A.L.R. 1349. This is particularly so where the contumacious conduct is of the class for which a penalty may be summarily imposed. Such direct contempt embraces an unjustifiable refusal of a witness to answer a question before a grand jury, which is part of the court. In such a case the primary purpose is not to punish for an offense but to compel obedience to and respect for an order of court. Rapalje, §§ 22, 67. State v. Baker, 222 Iowa 903, 270 N.W. 359; People ex rel. Rusch v. Kotwas, 363 Ill. 336, 2 N.E.2d 314.

In Melton v. Commonwealth, supra, where the subject of contempt is dealt with extensively, the court pointed out that in the history of the law there has been a special practice for prosecution and punishment of persons guilty of the misdemeanor known as criminal contempt, so that a court of justice might in a summary and expeditious way punish those who offend its authority. But it is said that in extreme cases of obstructing justice, the procedure should be by criminal law process of warrant or indictment. See also Riley v. Wallace, 188 Ky. 471, 222 S.W. 1085, 11 A.L.R. 337, and Wilder v. Sampson, 279 Ky. 103, 129 S.W.2d 1022. The present case is clearly within the former class of a *sui generis* public offense.

 (2) Juvenile courts are established as special tribunals with particular and limited jurisdiction. Their function in its application to public offenses is to administer justice in accordance with the progressive and humanitarian treatment of delinquent children charged with violating the criminal law. Robinson v. Kieren, 309 Ky. 171, 216 S.W.2d 925. The proceedings are corrective and preventive—to prevent delinquency, to discipline and to check a criminal tendency in its inception—rather than punitive. 31 Am.Jur., Juvenile Courts, §§ 5, 19, 25; 43 C.J.S. Infants § 6.

 We construe the juvenile court statute as not depriving any other court of the inherent and essential right and power to consider and dispose of direct contempt. Therefore, a court of general jurisdiction, such as a circuit court, is not deprived of jurisdiction to deal with contempt by a disobedient or recalcitrant witness within the age of the juvenile court's jurisdiction, as in the instant case. The act of this witness is within the clear delineation of the class of contempt exclusively within the power of the court in which the act occurs. Moreover, as written in the authoritative text of Rapalje on Contempt, § 13: "Notwithstanding the fact that contempts are regarded as offenses against the state, which being granted, it would seem to follow that any tribunal having criminal jurisdiction should have power to punish them when committed anywhere within the territory over which that jurisdiction extends, yet it is a well-settled rule that that court alone in which a contempt is committed, or whose order or authority is defied, has power to punish it or to entertain proceedings to that end."

## II.

We come to the question of whether the circuit court properly ruled the petitioner in contempt, the decision of which, obviously, is to be determined by the right of the witness to claim the constitutional privilege against self-incrimination.

The common law principle of privilege of a citizen to refuse to answer any question that will criminate himself (Kindt v. Murphy, Judge, 312 Ky. 395, 227 S.W.2d 895; Rapalje, § 73) finds expression and ratification in our guaranties of personal liberty and security in our Bills of Rights. Section 11 of the Kentucky Constitution declares that in all criminal prosecutions the accused "cannot be compelled to give evidence against himself." The counter-part safeguard, as a limitation upon the Federal power, is the Fifth Amendment of the Federal Constitution, which declares that no person "shall be compelled in any criminal case to be a witness against himself."

■ The constitutional provision against self-incrimination is a shield and protection, available to all persons summoned as witnesses, whether or not they have been accused of crime, including those called upon to testify at a grand jury inquiry. Bentler v. Commonwealth, 143 Ky. 503, 136 S.W. 896; Frain v. Applegate, Judge, 239 Ky. 605, 40 S.W.2d 274; Kinslow v. Carter, Judge, Ky., 282 S.W.2d 141.

■ However disagreeable it may have been to require this young girl, the petitioner herein, to testify to facts that may incriminate her father in the murder of which he stands accused, it is to be borne in mind that the constitutional immunity is for the protection of the witness and not for the protection of other persons. Gordon v. Tracy, Judge, 194 Ky. 166, 238 S.W. 395; Rogers v. United States, 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344, 19 A.L.R.2d 378; 58 Am.Jur. Witnesses, § 49; 98 C.J.S. Witnesses § 451. So, sympathy or a compassionate appeal cannot deprive the state of evidence to which it is entitled.

■ If it appears to the court that a responsive answer to a question propounded would furnish a necessary link in the chain of evidence which might implicate or convict the witness, he may properly claim his constitutional privilege. Commonwealth v. Rhine, Ky., 303 S.W.2d 301; Taylor v. Commonwealth, 274 Ky. 51, 118 S.W.2d 140; Wharton's Criminal Evidence, § 724. Obviously, the privilege prevails where a question upon its face discloses that a responsive answer may incriminate him. But, where the question upon its face is innocent, serious difficulty of adjudication may be encountered.

■ Looking further into the general construction of the provisions of immunity, it is uniformly recognized that it is for the court and not the witness to say whether refusal to answer is justified. This was laid down by Chief Justice Marshall in the trial of Aaron Burr. Rapalje, § 79; Kinslow v. Carter, Judge, Ky., 282 S.W.2d

141. Should it appear to the court that in the setting in which the question was asked there is reasonable possibility of exposure to prosecution or involvement in a crime by reason of a responsive answer, the claim of privilege must prevail. But the danger of self-incrimination to be apprehended must be real and substantial in the ordinary course of things, for the law does not permit a witness arbitrarily to hide behind an imaginary or unappreciable danger or risk. Otherwise, it would be within the power of a witness by a colorable pretense of self-incrimination, or by a subterfuge, to avoid giving culpable information concerning other persons. Frain v. Applegate, Judge, 239 Ky. 605, 40 S.W.2d 274; Kinslow v. Carter, Judge, Ky., 282 S.W.2d 141.

■ The particular question which a witness refuses to answer may not be considered in isolation. In adjudicating the right of immunity the court must be able to discern from the character of the question and the other facts adduced in the case some tangible and substantial probability that the answer of the witness might help to convict him of a crime.

Much has been written on this subject. The Supreme Court seems to have covered the whole matter in Hoffman v. United States, 341 U.S. 479, 71 S.Ct. 814, 818, 95 L.Ed. 1118, in saying that if a witness upon interposing his claim of immunity "were required to prove the hazard in the sense in which a claim is usually required to be established in court, he would be compelled to surrender the very protection which the privilege is designed to guarantee. To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result. The trial judge in appraising the claim 'must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence.' " See also Rogers v. United States,

340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344, 19 A.L.R.2d 378. Annotation, "Privilege against self-incrimination as to testimony before grand jury." 38 A.L.R.2d 225.

We followed that criterion in Kinslow v. Carter, Judge, supra, Ky., 282 S.W.2d 141.

In the present case, the trial judge, respondent herein, had before him the testimony of the witness before the grand jury in which she had answered a series of related questions leading up to the questions which the court has required her to answer, and, as well, other statements made outside the jury room.

Our case of Frain v. Applegate, Judge, 239 Ky. 605, 40 S.W.2d 274, is closely in point. In a grand jury investigation of a murder, Frain, a witness, was asked these two questions: (1) "Did you see a man shoot Alfred Cunningham in front of or near the residence of William·Bannon on East Eighth Street in Covington, Kentucky, on the afternoon of March 18, 1931?" And, (2) "If you answer in the affirmative, state to the grand jury who it was that shot Alfred Cunningham at that time and place." Upon the witness' refusal to answer the questions upon the ground of self-incrimination, the court held him to be in contempt. Frain sought relief in this court by an original action for a writ of prohibition. We regarded the questions as being directed exclusively to discovering what the witness might know concerning acts of other persons and as not tending to elicit from him any connection with the perpetration of the crime being investigated. We observed that the possibility of incrimination by further questioning of the witness to an "allowable extent" could not justify him in refusing to answer the questions actually propounded. The ruling of the circuit court was, therefore, approved and prohibition denied.

In Kinslow v. Carter, Judge, supra, Ky., 282 S.W.2d 141, we refused to prohibit a circuit judge' from requiring a minor witness to testify before the grand jury concerning the crime of incest with her of which her father stood accused.

Taylor v. Commonwealth, 274 Ky. 51, 118 S.W.2d 140, 141, presented an entirely different case. Taylor was indicted of a felony upon evidence which he was compelled to give before the grand jury. We held he was denied his constitutional right and set aside his conviction.

Reverting to the instant case, particularly to the possibility of self-incrimination by an affirmative answer to the first question propounded the witness, namely, whether she was in an automobile with her father and the boy killed, it is to be considered that mere presence when a crime was committed is not evidence of participation. Collins v. Commonwealth, 309 Ky. 572, 218 S.W.2d 393. Her previous statements showed she was merely present when the decedent was shot. In the light of that disclosure, which was before Judge Knight, the second question as to who shot the deceased would not have incriminated the witness.

Looking to our own responsibility, we may quote Wharton's Criminal Evidence (12th Ed.) § 723 in relation to a rule of contempt: "Ordinarily, the trial judge is in a much better position to appreciate the essential facts than an appellate court is, and he must be permitted to exercise some discretion, fortified by common sense, when dealing with this necessarily difficult subject."

The conclusion of the whole matter is that an order prohibiting the respondent from proceeding to enforce his rule of contempt should be, as it is,

Denied.